**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMILY FRIEND, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>FGF BRANDS (USA) INC., a Delaware Corporation, and FGF BRANDS, INC., a Canadian Corporation,<br><br>*Defendants*. | Case No.:<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Emily Friend ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendants FGF Brands (USA) Inc., a Delaware Corporation, and FGF Brands, Inc., a Canadian Corporation (collectively, "Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting that several of their naan products sold throughout the United States are baked in a tandoor oven, when in reality they are not. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (defined below), including requiring full disclosure of the actual baking processes and ovens used to bake their naan, correction of Defendants' marketing, advertising, and labeling, and the restoration of monies to the members of the proposed Classes. Plaintiff alleges the following upon personal knowledge as well as investigation by her counsel and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE CASE**

1.      This is a nationwide, multistate, and Illinois class action brought by Plaintiff on behalf of herself and all class members who purchased one or more of the following naan products for personal use and not for resale: (1) Stonefire Original Naan; (2) Stonefire Roasted Garlic Naan; (3) Stonefire Whole Grain Naan; (4) Stonefire Organic Original Naan; (5) Stonefire Original Mini Naan; (6) Stonefire Ancient Grain Mini Naan; (7) Stonefire Naan Dippers; and (8) any other Naan which Defendants marketed or sold in the United States for which they have misrepresented to the purchaser that the Naan is baked in a tandoor oven ("Mislabeled Naan").

2.      Naan is a type of leavened flatbread popular in Indian and other South and Central Asian cuisine, often served alongside curries.  Traditionally, naan is baked in a tandoor oven, which is a small oven consisting of a clay or stone heating surface, surrounded with insulation (traditionally sand), and an outer housing (traditionally stone masonry or earth housing).  A tandoor is cylindrical and narrows at the top to retain heat, with the cooking chamber being vertical above the heat source.  Heat is provided from a fire source at the bottom of the tandoor, typically burning charcoal or wood, and the oven is heated to a temperature often in excess of 700 degrees Fahrenheit.  Once the oven is heated, the raw naan is placed by hand on the hot inner wall of the tandoor for approximately one to two minutes, before being briefly moved closer to the heat source at the bottom of the tandoor and removed by hand for serving.  Given the difficulties and degree of individual attention required, generally only one or two pieces of naan can be cooked at a time in a tandoor oven.

3.      Many purists believe that there is no substitute for the flavor imparted by baking naan with a traditional stone or clay oven.  However, because of the small size of a tandoor oven, its structural components, and its labor-intensive cooking process (each of which limit the amount

2

of naan that can be made at once), naan has traditionally not been mass-produced in tandoor ovens.

4.      For example, the clay in tandoor ovens has a tendency to crack at high heat, allowing the sand insulation to leak into the baking chamber, potentially getting into the food. Bakers must also place portions of their arms into the narrow opening at the top of tandoors to slap the raw naan dough onto the inside walls of the tandoor, where the dough will cook.  Typically, a baker using a tandoor can only bake one or two pieces of naan at a time.  Because tandoor cooking chambers often exceed 700 degrees, bakers must move cautiously to avoid severe burns that would result from making contact with the baking chamber.  It is this baking process and need for constant human attention that prohibits large-scale commercial production of naan.

5.      For all of these reasons, naan is considered bread for restaurant consumption, not bread which a consumer can purchase at the store to eat at home.  Home cooks, unless they have access to a tandoor, are not likely to be able to enjoy hot naan bread with a meal.

6.      Defendants claims to have solved the mass-produced tandoor naan problem. Beginning in 2005, Defendants began selling a wide variety of naan products, and labeling them as "tandoor oven baked" or "Tandoor Oven-Baked to Honor 2,000 Years of Tradition." Defendants made their "tandoor-baked" naan available under a variety of brand names, at grocery stores and supermarkets across North America and Canada.

7.      Unfortunately for the millions of consumers who have paid a premium for Defendants' purportedly "tandoor-baked" naan, Defendants' representations are false and misleading.  Defendants' naan is not baked in a tandoor oven.  Rather, it is mass produced on an "endless" conveyor belt in a gas-heated commercial oven, which Defendants call a "tunnel oven," with steps taken to try to mimic traditional naan characteristics.

8.      Defendants market the Mislabeled Naan as being "Tandoor Oven-Baked to Honor

2,000 Years of Tradition" to portray the bread as a high-quality, hand-baked, low-volume alternative to other mass produced commercially available flatbreads. The ordinary usage of the term "tandoor," and "2,000 years of tradition," as well as the limitations of baking in a tandoor oven, describe a baking process devoid of automation or machinery, and imply a higher level of quality as compared with other commercially mass-produced methods.

9.     Plaintiff Emily Friend was one such person who was duped into purchasing Defendants' naan by their false representations on the naan's packaging. She brings suit on behalf of herself and all other customers similarly situated, seeking redress for Defendants' deceptive, unfair, and unlawful conduct.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Classes reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: Plaintiff resides in and suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

12.     Plaintiff Emily Friend is, and at all times relevant hereto has been, a citizen of the state of Illinois. Plaintiff has routinely purchased the Mislabeled Naan, including the Stonefire

Original Naan and Stonefire Original Mini naan, from several stores, including Jewel and Mariano's. Prior to purchasing the Mislabeled Naan, Plaintiff saw the claims on the front and back of the packaging that the naan was "Tandoor oven baked" and baked in a tandoor oven "to honor 2,000 years of tradition," which claims she relied on when deciding whether to purchase the Mislabeled Naan. Plaintiff, as did other members of the Classes, believed that the Mislabeled Naan was baked in a tandoor oven, in small batches by hand, and did not involve the conventional, automated, and commercial methods of baking bread. Based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendants, Plaintiff and other members of the Classes were unaware that the Mislabeled Naan was not baked in a tandoor oven.

13. As the result of Defendants' intentional, deceptive, and misleading conduct as alleged herein, Plaintiff was injured when she paid a purchase price or a price premium for the Mislabeled Naan that did not deliver what was promised. She paid the premium price on the assumption that the labeling and marketing of the Mislabeled Naan were accurate and true. Plaintiff would not have paid this money had she known that the Mislabeled Naan was actually mass produced on a conveyor belt in a commercial oven. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Mislabeled Naan in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Mislabeled Naan.

14. Defendant FGF Brands, Inc. ("FGF USA"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 16500 Collins Ave., Unit 952, Sunny Isles, FL 33160. Upon information and belief, since that time, all Mislabeled Naan sold in the United States was manufactured and sold by FGF USA.

15. Defendant FGF Brands, Inc. ("FGF Canada") is a corporation organized and

existing under the laws of Ontario, Canada, with its principal place of business located at 2600 Drew Road, Mississauga, Ontario L4T 3m5. Upon information and belief, FGF Canada wholly owns, operates, and/or controls FGF USA.

16. Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Mislabeled Naan throughout the United States, including in this District, beginning in 2005 and continuing through present. The advertising, labeling, and packaging of the Mislabeled Naan, relied upon by Plaintiff and the Classes, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Mislabeled Naan was designed to encourage consumers to purchase the Mislabeled Naan and reasonably misled the reasonable consumer, *i.e.*, Plaintiff and members of the Classes, into purchasing the Mislabeled Naan. Defendants own, manufacture, and distribute the Mislabeled Naan and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Mislabeled Naan.

## FACTUAL ALLEGATIONS

**The Mislabeled Naan**

17. Naan is a type of flatbread common in South and Central Asian cuisine traditionally prepared in a tandoor oven. A tandoor is a small oven made of stone or clay, surrounded by insulation and laid in a cylindrical shape. Heat comes from a fire— traditionally charcoal or wood-burning— at the bottom of the cylinder, and the radius of the cylinder decreases near the top in order to retain heat. A traditional tandoor is shown below:[1]

---

[1] Image sourced from https://4.imimg.com/data4/NP/XP/MY-28945224/clay-tandoor-250x250.jpg, last visited November 16, 2018.



18. Tandoori naan is cooked at exceptionally high temperatures, often over 700 degrees Fahrenheit. The naan is placed on the heated inner surface of the tandoor, where it is cooked for one to two minutes. After that time, the naan is moved closer to the heat source at the bottom of the tandoor, where it is finished for approximately thirty seconds, before being removed. Naan cooking on the vertical wall of a tandoor is shown below:[2]



---

[2] Image sourced from: https://encrypted-tbn0.gstatic.com/images?q=tbn:ANd9GcSBPcSOhU0RfYYWO4KsuSHc29KSZ-cZVXpDVihfT-OWJbh7QNqplA

19.    Because of the small size of traditional tandoor ovens, along with the labor involved in preparing even a single piece of naan and the dangers posed by the high heat, naan is generally made in relatively small quantities— typically one or two at a time— in bakeries and restaurants. Modern tandoors used in these settings maintain the traditional core characteristics of a stone or clay interior, with insulation and a cylindrical shape narrowing at the top, as shown below[3]:



20.    Because of the labor-intensive nature of naan production, requiring the baker's undivided attention for each piece of naan, naan is not suitable for mass production, even in modern tandoor-style ovens.  "It needs to be baked at blistering high temperatures, not something that's

---

[3] Image sourced from https://s-media-cache-
ak0.pinimg.com/736x/c6/b8/96/c6b896ebc4d2bd9183336c76d36f2b77.jpg

easy to do commercially without drying up in the insides, rendering them unappealing soon afterward."[4]

21.     In 2005, naan became widely available in grocery stores and supermarkets, as FGF began mass producing and selling what it describes as traditional, tandoor-baked naan.  Over the last 13 years, Defendants have offered their naan under a variety of brand names.  These have included their own brands, such as Stonefire (sold at stores including Whole Foods, Mariano's, and Costco), Santosh, as well as other store brands such as Reya and Rivaj (sold as Costco), and Wegman's.   Regardless of the brand, however, the packaging for each Mislabeled Naan specifically informed prospective purchasers that the naan was "Tandoor Baked" and "Tandoor Oven-Baked to Honor 2,000 Years of Tradition."  The Mislabeled Naan includes:

     a.   Stonefire Original Naan;



---

[4] Marina Strauss, *The world is flatbread for bakery behind PC naan*, The Globe and Mail (last updated Mar. 17, 2009), http://www.theglobeandmail.com/report-on-business/the-world-is-flatbread-for-bakery-behind-pc-naan/article18174686/

b. Stonefire Roasted Garlic Naan;



c. Stonefire Whole Grain Naan;



d. Stonefire Organic Original Naan;



e. Stonefire Original Mini Naan;



    f.   Stonefire Ancient Grain Mini Naan;



    g.   Stonefire Naan Dippers; and



    h.   Any other Naan marketed or sold by Defendants in the United States and

represented as baked in a tandoor oven when it was not.

**Defendants Advertise their Naan as being "Tandoor Oven Baked" and "TANDOOR OVEN BAKED TO HONOR 2,000 YEARS OF TRADITION."**

    22.    Defendants formulate, develop, manufacture, label, package, distribute, market,

advertise, and sell Mislabeled Naan across the United States.

23.    Defendants represent in prominent text on the front packages of their Stonefire Original Naan, Stonefire Roasted Garlic Naan, Stonefire Whole Grain Naan, Stonefire Organic Original Naan, Stonefire Original Mini Naan, Stonefire Ancient Grain Mini Naan, and Stonefire Naan Dippers that the naan is "Tandoor oven baked," as depicted in the below image of Stonefire Original Naan's front packaging.





24.     Defendants also represent, in bold, oversized, and all-capital text on the back of their packages of their Stonefire Original Naan, Stonefire Roasted Garlic Naan, Stonefire Whole Grain Naan, Stonefire Organic Original Naan, Stonefire Original Mini Naan, Stonefire Ancient Grain Mini Naan, and, upon information and belief, Stonefire Naan Dippers that their naan is "HAND-STRETCHED AND TANDOOR OVEN-BAKED TO HONOR 2,000 YEARS OF TRADITION," as depicted in the below imagine of Stonefire Original Naan's back packaging.



25.     In addition to marketing the Mislabeled Naan in stores, Defendants advertise the

same images of the front and back packages of their Stonefire Original Naan, Stonefire Roasted

Garlic Naan, Stonefire Whole Grain Naan, Stonefire Organic Original Naan, Stonefire Original

Mini Naan, Stonefire Ancient Grain Mini Naan, and Stonefire Naan Dippers on their website,

which images prominently display the statements that the naan is "Tandoor oven baked" and

"TANDOOR OVEN-BAKED TO HONOR 2,000 YEARS OF TRADITION."[5]

26.      Moreover, for each of their Stonefire Original Naan, Stonefire Roasted Garlic Naan, Stonefire Whole Grain Naan, Stonefire Organic Original Naan, Stonefire Original Mini Naan, Stonefire Ancient Grain Mini Naan, and Stonefire Naan Dippers breads, Defendants advertise on their website separate diagraming photographs of each naan with informational text describing the naan, including text that states that the naan is "Tandoor Oven Baked," as depicted in the below diagram of Defendants' Stonefire Original Naan.[6]



**The Mislabeled Naan is not baked in a tandoor oven.**

27.      Contrary to their advertisement campaign, Defendants' Mislabeled Naan is not actually baked in a tandoor oven.  Instead, as conceded by their own patents, the Mislabeled Naan is mass produced on an "endless" conveyor belt that rotates through a gas-fired commercial oven

---

[5] https://www.stonefire.com/products/, *last accessed* Nov. 12, 2018.
[6] https://www.stonefire.com/products/original-naan, *last accessed* Nov. 12, 2018.

that Defendants themselves invented and patented. *See* U.S. Patent No. 9044023. Below is an illustration of Defendants' conveyor belt commercial oven system taken from U.S. Patent No. 8869684 B2.



28.     As Ojus Ajmera, one of Defendants' founders stated, "The key to what our challenge was was to figure out how to make a product that's been made traditionally for thousands of years, in a small little tandoor oven, and commercialize it to make 15,000 pieces an hour."

29.     The Mislabeled Naan products are not "Tandoor Oven Baked," "Hand Stretched and Tandoor Oven-Baked to Honor 2,000 Years of Tradition," or baked in a tandoor oven in any sense of the phrase. Rather, the Mislabeled Naan products are mass produced on a conveyor belt in a gas-heated commercial oven designed by Defendants to overcome the impracticalities of using a tandoor oven to mass-produce products.

17

30. Defendants' statements on the packages of their Mislabeled Naan and on their website are false.

31. Defendants were aware that the statements were false at the time they made them, and that these statements were both misleading and unfair.

32. Defendants knew that by representing that the Mislabeled Naan was baked in a tandoor oven, they could charge a premium for authentically baked naan in a tandoor oven, whereby each naan is individually moved to and removed from the baking chamber by hand with the baker's undivided attention, compared to the other mass-produced naan that was not marketed as tandoor-baked. By asserting that their naan is "Hand-Stretched and Tandoor Oven-Baked to Honor 2,000 Years of Tradition," Defendants mislead consumers into thinking their naan was baked traditionally, by hand, without automated or commercial methods, and in low-volumes, as all traditionally baked tandoori naan is.

**Plaintiff's Reliance was Reasonable and Foreseen by Defendants.**

33. Plaintiff reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Mislabeled Naan.

34. Plaintiff reasonably relied upon Defendants' false, misleading, and unfair representations alleged herein, including those on the front and back packaging of the Mislabeled Naan that she has repeatedly purchased.

35. Any reasonable consumer would consider the labeling of a product when deciding whether to purchase the Mislabeled Naan. Here, Plaintiff and members of the Classes relied on the specific statements and misrepresentations by Defendants that the Mislabeled Naan was "Tandoor-oven baked" and "Baked in a tandoor oven to honor 2,000 years of tradition," and

accordingly believed that the Mislabeled Naan was baked in a tandoor oven by hand using traditional methods, in small volumes, and without the more conventional and automated commercial methods of baking.

36.     Nor did consumers have any reason to believe that Defendants' statements on the Mislabeled Naan's packaging were false. Because the details of Defendants' baking processes were known to Defendants, Defendants enjoyed being in a position of influence and superiority with respect to their sales to unknowing consumers. Defendants took advantage of their superior position by promising consumers that the naan was baked in a tandoor oven, knowing that consumers would trust that the representation was accurate.

**Defendants have continued to intentionally defraud consumers despite knowing that the Mislabeled Naan is not baked in a tandoor oven.**

37.     At all relevant times, Defendants had firsthand, specific knowledge of the processes they chose to employ to bake their naan, including a detailed, technical knowledge of the ovens they use to bake their Mislabeled Naan. Upon information and belief, Defendants invented and patented their own "endless conveyor belt," gas-heated commercial oven system to mass produce 15,000 pieces of naan an hour.[7] Defendants knew that they could not mass produce naan in a tandoor oven and intentionally set out to design and create a new oven system capable of mass producing their food.

38.     Generally, inventions will not qualify for patent protection unless they are new and non-obvious, and the fact the Defendants sought and obtained patent protection for their invention underscores Defendants' knowledge that their "invention" is not a tandoor oven.

39.     In their own patent material, Defendants chose not to refer to their commercial conveyor-belt ovens as "tandoor ovens," and in a recent patent infringement lawsuit against a

---

[7] *See e.g.*, Patent Numbers: US 9,052, 117 B2; US 8,869,684 B2; US 9,004,021

competitor, Defendants effectively distinguished their own commercial conveyor-belt ovens from tandoor ovens, noting that they used "a commercial-scale tunnel oven that captures the benefits of traditional tandoor ovens while allowing the throughput required for commercial-scale production." *See FGF Brands, Inc. v. TWI Foods Inc.*, No. 1:17-cv-01783, Dkt. No. 1, ¶ 7 (N.D. Ill. Mar. 6, 2017). Defendants' conveyor-belt commercial oven is no more of a "tandoor" oven than any other high-heat commercial oven.

40. Moreover, in August of 2017, Defendants were sued for misleading consumers to believe that their naan was baked in a tandoor oven in *Sims v. FGF Brands (USA) INC.*, Case No.: 5:17-cv-1815 (C.D. Cal.). Rather than cease their fraudulent and deceptive marketing campaign, Defendants resolved the litigation by agreed stipulation in March of 2018 and doubled down on their deceptive marketing campaign.

41. As such, Defendants intentionally continue to market the Mislabeled Naan as being baked in a tandoor oven, and being baked to honor 2,000 years of tradition, to deceive unknowing consumers into believing that the Mislabeled Naan was traditionally baked in a tandoor oven, by hand and without automation, and in small volumes to unfairly extract a price premium from unsuspecting consumers.

**Privity Exists with Plaintiff and the Proposed Class.**

42. Defendants knew that consumers such as Plaintiff and the proposed Classes would be the end-purchasers of the Mislabeled Naan and the target of their advertising and statements.

43. Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end-purchasers of the Mislabeled Naan, including Plaintiff and the proposed Classes.

44. Defendants directly marketed to Plaintiff and the proposed Classes through their

labeling, advertising, and packaging of the Mislabeled Naan.

45.    Plaintiff and the proposed Classes are the intended beneficiaries of Defendants'

express and implied warranties.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action individually and on behalf of the following Classes

pursuant to Rule 23of the Federal Rules of Civil Procedure:

> **National Class:** All persons in the United States who purchased the Mislabeled Naan for household or business use, and not for resale.

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Mislabeled Naan for household or business use, and not for resale.[8]

> **Illinois Class:** All persons in the State of Illinois who purchased the Mislabeled Naan for household or business use, and not for resale.

47.    Excluded from the Classes are the Defendants, any parent companies, subsidiaries,

and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all

governmental entities, and any judge, justice, or judicial officer presiding over this matter.

48.    This action is brought and may be properly maintained as a class action.  There is

a well-defined community of interests in this litigation and the members of the Classes are easily

ascertainable.

49.    The members in the proposed Classes are so numerous that individual joinder of all

members is impracticable, and the disposition of the claims of the members of the Classes in a

---

[8] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, et seq.); Florida (Fla. Stat. §501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §445.901, et seq.); Minnesota (Minn. Stat. §325F.67, et seq.); Missouri (Mo. Rev. Stat. §407.010, et seq.); New Jersey (N.J. Stat. §56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §349, et seq.); and Washington (Wash. Rev. Code §19.86.010, et seq.).

single action will provide substantial benefits to the parties and Court.

50.     Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

a.   Whether Defendants owed a duty of care to Plaintiff and the Classes;

b.   Whether Defendants knew or should have known that their conveyor-belt commercial oven was not a tandoor oven;

c.   Whether Defendants wrongfully represented and continue to represent that the Mislabeled Naan are "Tandoor oven baked" and "Tandoor Oven-Baked to Honor 2,000 Years of Tradition;"

d.   Whether Defendants representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

e.   Whether those representations are likely to deceive a reasonable consumer;

f.   Whether a reasonable consumer would consider, in purchasing the naan, the fact that the Mislabeled Naan was mass produced in a commercial conveyor-belt oven rather than in a tandoor oven, or whether the naan was not baked traditionally, in small values, and without using more conventional, automated, and commercial means;

g.   Whether a reasonable consumer would pay a lesser price for, or would not purchase at all, mass-produced naan baked in a commercial, gas-heated conveyor-belt oven as compared to naan baked in a tandoor oven;

h.   Whether Defendants had knowledge that those representations were false, deceptive, and misleading;

i.   Whether Defendants continue to disseminate those representations despite knowledge that they are false, deceptive, and misleading;

j.   Whether representations that the naan is mass produced in a commercial conveyor-belt oven as opposed to a tandoor oven is material to a reasonable consumer;

k.   Whether Defendants' representations and descriptions on the labeling of the Mislabeled Naan are likely to mislead, deceive, confuse, or confound consumers acting reasonably; ;

l.   Whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

m.   Whether Defendants violated any of the consumer protection statutes of any

state in which a Multistate Class Member resides;

n.   Whether Defendants violated Illinois' Uniform Deceptive Trade Practices Act;

o.   Whether Defendants made fraudulent representations and/or omissions;

p.   Whether Defendants were unjustly enriched;

q.   Whether Plaintiff and the members of the Classes are entitled to actual, statutory, and punitive damages; and

r.   Whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

51.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Individual questions, if any, are not prevalent in comparison to the numerous questions that dominate this action.

52.   Plaintiff's claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

53.   Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interest incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

54.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

55.   Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

56.   As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of State Consumer Fraud Acts on Behalf of the Multi-State Class**

57.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58.     The Consumer Fraud Acts of the States in the Multi-State Class[9] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

59.     Defendants intended that Plaintiff and each of the members of the Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct, as Plaintiff was.

60.     Had the truth been known concerning the Mislabeled Naan, Plaintiff and other Multi-State Class Members would not have purchased the Mislabeled Naan or would not have paid as much for the Mislabeled Naan.

61.     As a direct and proximate result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Class have sustained damages in an amount to be proven at trial.

62.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of attorney fees and punitive damages is appropriate.

---

[9] California (Cal. Bus. & Prof. Code §17200, et seq.); Florida (Fla. Stat. §501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §445.901, et seq.); Minnesota (Minn. Stat. §325F.67, et seq.); Missouri (Mo. Rev. Stat. §407.010, et seq.); New Jersey (N.J. Stat. §56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §349, et seq.); and Washington (Wash. Rev. Code §19.86.010, et seq.).

## COUNT II
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*., in the Alternative to Count I and on Behalf of the Illinois Subclass**

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* ("ICFA").

65.     Defendants engaged in a deceptive act or practice in violation of Section 2 of ICFA by knowingly misrepresenting to Plaintiff and members of the Class that the Mislabeled Naan was "tandoor oven baked" and "Tandoor Oven-Baked to Honor 2,000 Years of Tradition" when it was in fact mass produced in Defendants' recently patented commercial oven system.

66.     Additionally, Defendants' deceptive and unfair practices violate Section 2 of the Uniform Deceptive Trade Practices Act, as set forth more fully in Count VII, *infra*, which constitutes an independent violation of Section 2 of ICFA.

67.     Defendants' deceptive acts and practices are continuing.

68.     Defendants intended for Plaintiff and the Illinois Class members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Mislabeled Naan, and at what price.

69.     Defendants' false claims, particularly those on the front and back of each package of Mislabeled Naan, were likely to deceive consumers with respect to the Mislabeled Naan's baking method.

70.     Defendants' false claims and other deceptive conduct was likely to cause consumers to purchase and/or overpay for the Mislabeled Naan.

71. Defendants' misrepresentations and false claims occurred before Plaintiff and the Illinois Class decided to purchase the Mislabeled Naan.

72. Defendants' misrepresentations and false claims did in fact deceive Plaintiff and the Illinois Class with respect to the Mislabeled Naan's baking methods.

73. Defendants' misrepresentations and false claims did in fact deceive and cause Plaintiff and the Illinois Class members to purchase and/or overpay for the Mislabeled Naan.

74. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

75. Defendants' misrepresentations and false claims that the Mislabeled Naan is "Tandoor Oven-Baked to Honor 2,000 Years of Tradition" are material because any reasonable consumer would have considered whether the product was traditionally baked in a tandoor oven, by hand, in low volumes, and without use of conventional and automated commercial baking methods.

76. If Plaintiff and the Illinois Class members had known that the Mislabeled Naan did not in fact match the baking process described on the packaging and advertisements, they would have either paid less for the Mislabeled Naan or would not have purchased it at all.

77. As a result of Defendants' conduct, Plaintiff and the Illinois Class members have suffered actual damages in that they have purchased the Mislabeled Naan at a greater price than they would have paid if they knew that the naan was not baked in a tandoor oven.

78. As a result of Defendants' conduct, Plaintiff and the Illinois Class members have suffered actual damages in that they purchased Mislabeled Naan that they would not have purchased had they known that the Naan was not baked in a tandoor oven.

79.     As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendants set forth above, Plaintiff and the Illinois Class members are entitled to actual damages, compensatory damages, penalties, attorney fees, and costs, as set forth in the Section 10a of the ICFA.

80.     Defendants' deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously entitling Plaintiff and the Illinois Class members to an award of punitive damages.

**COUNT III**
**Violations of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq*., against Defendants on Behalf of the Illinois Subclass**

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The conduct described in this Complaint constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.* ("IDTPA").

83.     Defendants engaged in a deceptive act or practice in violation of the IDTPA by knowingly misrepresenting to Plaintiff and members of the Class that the Mislabeled Naan was "tandoor oven baked" and "Tandoor Oven-Baked to Honor 2,000 Years of Tradition" when it was actually mass produced in Defendants' patented commercial conveyor-belt oven system.

84.     Defendants' misleading and false claims violate: Section 2(a)(5) of the IDTPA in that they represent that their goods have characteristics that they do not have; Section 2(a)(7) of the IDTPA in that they represent that goods are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; Section 2(a)(9) of the IDTPA in that they advertise goods or services with intent not to sell them as advertised; and Section 2(a)(12) of the IDTPA in that they engage in any other conduct which similarly creates a likelihood of

confusion or misunderstanding.

85.    Defendants' deceptive acts and practices are continuing.

86.    Defendants intended for Plaintiff and the Illinois Class members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Mislabeled Naan, and at what price.

87.    Defendants' false claims, particularly those on the front and back of each package of Mislabeled Naan, were likely to deceive consumers with respect to the Mislabeled Naan's baking method.

88.    Defendants' false claims and other deceptive conduct was likely to cause consumers to purchase and/or overpay for the Mislabeled Naan.

89.    Defendants' misrepresentations and false claims occurred before Plaintiff and the Illinois Class decided to purchase the Mislabeled Naan.

90.    Defendants' misrepresentations and false claims did in fact deceive Plaintiff and the Illinois Class with respect to the Mislabeled Naan's baking methods.

91.    Defendants' misrepresentations and false claims did in fact deceive and cause Plaintiff and the Illinois Class members to purchase and/or overpay for the Mislabeled Naan.

92.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

93.    Defendants' misrepresentations and false claims that the Mislabeled Naan is "Tandoor Oven-Baked to Honor 2,000 Years of Tradition" are material because any reasonable consumer would have considered whether the product was traditionally baked in a tandoor oven, by hand, in low volumes, and without use of conventional and automated commercial baking

methods

94.     If Plaintiff and the Illinois Class members had known that the Mislabeled Naan did not in fact match the baking process described on the packaging and advertisements, they would have either paid less for the Mislabeled Naan or not purchased it at all.

95.     As a result of Defendants' conduct, Plaintiff and the Illinois Class members have suffered actual damages in that they have purchased the Mislabeled Naan at a greater price than they would have paid if they knew that the naan was not baked in a tandoor oven.

96.     As a result of Defendants' conduct, Plaintiff and the Illinois Class members have suffered actual damages in that they purchased Mislabeled Naan that they would not have purchased had they known that the Naan was not baked in a tandoor oven.

97.     As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendants set forth above, Plaintiff and the Illinois Class members are entitled to injunctive relief under Section 3 of the IDTPA.

98.     Defendants' deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Illinois Class members to an award of attorney fees and costs under Section 3 of the IDTPA.

## COUNT IV
### Fraudulent Concealment against Defendants on Behalf of the National Class and Illinois Subclass

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.     Defendants concealed from and failed to disclose to Plaintiff and the Classes that their Mislabeled Naan was actually mass-produced on a conveyor belt in a gas-heated commercial oven system, rather than baked in a tandoor oven to honor 2,000 years of tradition.

101.    Defendants were under a duty to disclose to Plaintiff and members of the Classes the true baking process for the Mislabeled Naan because Defendants were in a superior position to know the actual baking process of their Mislabeled Naan and knew that Plaintiff and the Classes could not reasonably have been expected to learn or discover that Defendants were misrepresenting the baking process on the packaging, labels, advertising, and website prior to purchasing the Mislabeled Naan.

102.    As set forth *supra*, Defendants knew that their Naan was not baked in a tandoor oven because Defendants: designed, created, and patented their own new "endless conveyor belt" oven; effectively acknowledged in other litigation and in their patent materials that their ovens were not tandoor ovens; and were previously sued by another consumer for the same deceptive conduct as alleged in this Complaint, since the resolution of which Defendants have continued to mislabel their naan as tandoor-oven baked.

103.    Defendants' misrepresentations and false claims that the Mislabeled Naan is "Tandoor oven baked" and "Tandoor Oven-Baked to Honor 2,000 Years of Tradition" are material because any reasonable consumer would have considered whether the product was traditionally baked in a tandoor oven, by hand, in low volumes, and without use of conventional and automated commercial baking methods.

104.    Plaintiff and the Classes justifiably relied on the omissions of Defendants to their detriment and have suffered as a direct and proximate result of Defendants' conduct actual damages in that they have purchased the Mislabeled Naan which they would have either paid less for or would have not purchased at all had they know the naan was mass produced in a conveyor-belt commercial oven system.

105.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief,

attorney fees, costs, and any other just and proper relief available under the laws.

## <u>COUNT V</u>
### Unjust Enrichment against Defendants on Behalf of the National Class and Illinois Subclass

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Substantial benefits have been conferred on Defendants by Plaintiff and the Classes through the purchase of Mislabeled Naan.  Defendants knowingly and willingly accepted and enjoyed these benefits.

108.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Mislabeled Naan was baked in a tandoor oven, as represented and warranted by Defendants.  As such, it is inequitable for Defendants to retain the benefit of the payments under these circumstances.

109.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Classes.

110.    Plaintiff and the Classes are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

111.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorney fees, costs, and any other just and proper relief available under the laws.

112.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendants to bear the costs of class notice;

B.      An order enjoining Defendants from selling the Mislabeled Naan until the misleading and false statements are removed from their packaging and from any other form of misleading advertisement, including on Defendants' website;

C.      An order enjoining Defendants from selling the Mislabeled Naan in any manner suggesting or implying that it is baked in a tandoor oven;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Illinois law, plus pre- and post-judgement interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendants to pay punitive damages on any count so allowable;

J.      An order awarding attorney fees and costs, including the costs or pre-suit investigation, to Plaintiff and the Classes; and

K.     An order for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of her peers on all issues so triable.


**LITE DEPALMA GREENBERG, LLC**

Dated: November 16, 2018                     */s/ Katrina Carroll*
                                            Katrina Carroll
                                            Kyle A. Shamberg
                                            Nicholas R. Lange
                                            111 W. Washington Street, Suite 1240
                                            Chicago, Illinois 60602
                                            Telephone: (312) 750-1265
                                            KCarroll@LiteDePalma.com
                                            KShamberg@LiteDePalma.com
                                            NLange@LiteDePalam.com


**GORDON LAW OFFICES, LTD.**

                                            */s/ Richard R. Gordon*
                                            Richard R. Gordon
                                            111 W. Washington Street, Suite 1240
                                            Chicago, Illinois 60602
                                            Telephone: (312) 332-5200
                                            RRG@GordonLawChicago.com