**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMILY FRIEND, individually and on behalf of a class of similarly situated individuals,    ) | |
| ) | |
| ) | Case No. 1:18-cv-07644 |
| Plaintiff,    ) | |
| ) | Hon. Judge Robert W. Gettleman |
| v.    ) | |
| ) | Magistrate Judge Maria Valdez |
| ) | |
| FGF BRANDS (USA) INC., a Delaware Corporation, and FGF BRANDS, INC., a Canadian Corporation,    ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| ) | |
| Defendants.    ) | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Diana Torres
diana.torres@kirkland.com
Lauren J. Schweitzer
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Megan M. New (ARDC No. 6300422)
mnew@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Dale Cendali
dale.cendali@kirkland.com
Joseph M. Sanderson
joseph.sanderson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Defendants FGF Brands (USA) Inc. and FGF Brands, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

SUMMARY OF ALLEGATIONS .................................................................................... 2

ARGUMENT .................................................................................................................... 4

I.      PLAINTIFF'S CONSUMER FRAUD CLAIMS (COUNTS I AND II) FAIL
        FOR MULTIPLE INDEPENDENT REASONS. ................................................. 5

        A.    Plaintiff Fails To Plead Deception Under The Reasonable Consumer
              Standard ............................................................................................... 5

        B.    Plaintiff Fails To Adequately Allege That FGF's Tandoor-Baked Claims
              Are Material To Reasonable Consumers' Purchasing Decisions ............ 8

        C.    Plaintiff's Conclusory Claim That She Paid A Premium Price Is Inadequate ......... 9

        D.    Plaintiff Lacks Standing As To Products She Has Not Purchased ........................ 10

        E.    Plaintiff's Non-Illinois Claims Fail Because Plaintiff Lacks Standing And
              This Court Lacks Personal Jurisdiction As To Those Claims ................................. 11

        F.    Plaintiff's Allegations Fail To Meet The Requirements of Rule 9(b) .................... 12

II.     PLAINTIFF'S ILLINOIS' DTPA CLAIM (COUNT III) SIMILARLY FAILS ........ 13

III.    PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM (COUNT IV)
        FAILS BECAUSE SHE ALLEGES NO MATERIALITY OR DUTY OF
        DISCLOSURE ................................................................................................... 14

IV.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT V) FAILS ................... 15

CONCLUSION ............................................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................4

*Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*,
    90 N.E.3d 440 (Ill. 2017)...................................................................................11

*Baldwin v. Star Sci., Inc.*,
    78 F. Supp. 3d 724 (N.D. Ill. 2015) ..................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
    No. 17 C 3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018)...........................13

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.*,
    No. 4:15 CV 384 RWS, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ..................6

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) .............................................................................5

*Borden, Inc. v. Kraft, Inc.*,
    No. 84 C 5295, 1984 WL 1458 (N.D. Ill. Sept. 28, 1984).................................9

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)................................................................................11, 12

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ...........................................................4, 5, 12, 13

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ...........................................................................15

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996)................................................................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................11

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) .......................11

*Di Rito v. Metro. Life Ins. Co.*,
  2018 IL App (1st) 173202-U ...................................................................15

*Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*,
  790 F. Supp. 2d 732 (N.D. Ill. 2011) ......................................................13

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .....................................................................6

*Giammanco v. Giammanco*,
  625 N.E.2d 990 (Ill. App. Ct. 1993) .......................................................10

*Henderson v. Gruma Corp.*,
  No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11,
  2011) .........................................................................................................9

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) ..........................................................5

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 16-cv-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)...................10

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ..................................................................6

*Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*,
  909 N.E.2d 848 (Ill. Ct. App. 2009) ........................................................13

*Kommer v. Bayer Consumer Health*,
  252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018)...................6

*Lateef v. Pharmavite LLC*,
  No. 12 C 5611, 2013 WL 1499029 (N.D. Ill. Apr. 10, 2013)...................8

*Leppert v. Champion Petfoods USA Inc.*,
  No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ....................12

*Marvellous Day Elec. (S.Z.) Co. v. Ace Hardware Corp.*,
  No. 11 C 8756, 2013 WL 4565382 (N.D. Ill. Aug. 27, 2013)...................8

*Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
  No. 5 C 1403, 2006 WL 1843370 (N.D. Ill. June 28, 2006) .....................7

*Miller v. William Chevrolet/GEO, Inc.*,
  762 N.E.2d 1 (Ill. App. Ct. 2001) ...........................................................14

*Nakajima All Co. v. SL Ventures Corp.*,
  No. 00 C 6594, 2001 WL 641415 (N.D. Ill. June 4, 2001) (Gettleman, J.)...................13

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ...................................................................................5

*Pearson v. Target Corp.*,
   No. 11 CV 7972, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) ...............................10

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ...................................................................7

*Porter v. NBTY, Inc.*,
   No. 15 CV 11459, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ..........................10

*Sabo v. Wellpet, LLC*,
   250 F. Supp. 3d 332 (N.D. Ill. 2017) .....................................................................5

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017) ....................................................................................10

*Tylka v. Gerber Prods. Co.*,
   No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .....................................8

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) .........................................................................14, 15

**Statutes**

Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), 815 ILCS
   505/1, *et seq.* ................................................................................................ *passim*

Illinois Uniform Deceptive Trade Practices Act (DTPA), 815 ILCS 510/1, *et seq*..................2, 13

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

**Other Authorities**

*Awarding Innovation "Naan" Too Soon*, Prepared Foods, Oct. 1, 2006,
   https://www.preparedfoods.com/ articles/105330-awarding-innovation-naan-
   too-soon................................................................................................................3

U.S. Const. art. III ...........................................................................................10, 11

## INTRODUCTION

In this copycat putative class action, Plaintiff Emily Friend ("Plaintiff") claims she "routinely" overpaid for naan bread because she did not know that the pre-packaged, plastic-wrapped naan she bought from Jewel and Mariano's was not baked in a small clay pit entirely by hand in batches of one or two pieces at a time, without "the conventional, automated, and commercial methods of baking bread." At the heart of Plaintiff's Complaint is her fundamental allegation that Defendants FGF Brands (USA) Inc.'s and FGF Brands, Inc.'s (collectively, "FGF") tandoor oven is not actually a tandoor oven because it incorporates certain automated, commercial methods, and therefore that its naan is not "tandoor-baked." After having purchased FGF's naan "routinely" for an unspecified period of time, Plaintiff now seeks to bring claims against FGF for supposedly having deceived consumers around the country about the manufacture of its bread. There is more than a hint of irony in Plaintiff purporting to tell FGF, a business founded by a family of Indian origin, that its methods of baking are insufficiently authentic for her liking. There is also none of the plausibility required to state her claims.

Naan is a flatbread common to many Central and Southern Asian cultures, including India, traditionally cooked in a type of oven called a tandoor (which is the Hindi word for oven). FGF developed innovative and award-winning techniques to make naan widely available for the first time, inventing a tandoor that has all of the key elements common to tandoors but is capable of producing naan on a scale suitably large for sale in grocery stores. *See* Complaint ("Compl.") ¶¶27-28, 39. FGF thus describes its naan as "tandoor oven baked." *Id.* ¶6. FGF's revolutionary patented tandoor tunnel oven allowed quality naan to become widely available to American consumers for the first time, rather than only in restaurants or immigrant communities—just as foods like pizza and bagels evolved from immigrant foods to American staples. *Id.* ¶¶5-6.

Plaintiff's Illinois Consumer Fraud Act (ICFA) claims fail for a number of reasons. First,

Plaintiff fails to plead plausibly, and with the required particularity, that a significant number of consumers acting reasonably would be misled into thinking that a plastic-wrapped, pre-made product on supermarket shelves was baked without automation. Plaintiff likewise fails to plead plausibly that the esoteric question of whether FGF's tandoor counts as a tandoor because it has automated capability is material to reasonable consumers' purchasing decisions. She also fails to meet the fundamentals of Rule 9(b) by failing to plead where, when, and for how long she was actually deceived, and by alleging damages only conclusorily. Plaintiff also lacks standing as to products she did not purchase and as to purchases made under the laws of other states.

Plaintiff's remaining claims also fail. Her Illinois Uniform Deceptive Trade Practices Act claims fail for the same reasons as her ICFA claims, as well as failure to plead a likelihood of future deception. Her fraudulent concealment claims fail because she cannot show that FGF owed her a duty of disclosure and does not plead materiality plausibly. Her unjust enrichment claims fail because Illinois law rejects such claims based on deceptive labeling. In short, the Complaint fails to state any claim, and Plaintiff's allegations are too implausible to cure.

## SUMMARY OF ALLEGATIONS

FGF is the innovative company that brought high-quality naan to grocery stores. Compl. ¶21. According to Plaintiff, "naan is not suitable for mass production . . . 'It needs to be baked at blistering high temperatures, not something that's easy to do commercially without drying up in the insides rendering them unappealing soon afterward.'" *Id*. ¶20. Plaintiff thus claims that "naan is considered bread for restaurant consumption, not bread which a consumer can purchase at the store to eat at home." *Id*. ¶5. That is, until FGF launched its naan products in 2005. *Id*. ¶21.

FGF invented its own patented tandoor tunnel oven capable of producing naan on a scale suitable for sale in grocery stores. *Id*. ¶28. As its patent reflects, FGF's patented tandoor tunnel oven embodies the key characteristics common to tandoors: (1) it cooks at very high temperatures

and contains an insulating material between the exterior shell and interior cooking space to retain heat; (2) it has a very hot clay, stone, or ceramic surface for contact cooking; and (3) it has a chamber in which hot air circulates. Ex. 1 (Patent). Specifically, FGF's patented tandoor oven uses a conveyor with stone, clay, or porcelain tiles as the cooking surface on which the naan is placed. *Id.* The tiles move through a very hot, heated tunnel where the naan is baked. *Id.* As Plaintiff admits, in designing its tandoor oven, FGF took steps "to try to mimic traditional naan characteristics." Compl. ¶7. FGF's delicious naan and its groundbreaking tandoor oven were recognized by the food industry with the 2006 Spirit of Innovation Award. *See* William A. Roberts, Jr., *Awarding Innovation "Naan" Too Soon*, Prepared Foods, Oct. 1, 2006, https://www.preparedfoods.com/articles/105330-awarding-innovation-naan-too-soon ("FGF developers then faced the daunting task of creating a tandoor that could handle the capacity expected of a major product launch across North America.").

Using its award-winning oven, FGF bakes a variety of naan products. Compl. ¶¶21(a)-(g), 27-29. Launched in 2005, FGF's naan sells today at stores including Whole Foods, Mariano's, Jewel, and Costco, under the FGF-owned Stonefire® brand, as well as other store brands. *Id.* ¶21.

FGF's naan products are packaged in plastic pouches or (for Stonefire Naan Dippers) plastic tubs. *Id.* ¶¶21(a)-(g). FGF's packaging for its naan products includes many statements, including that the naan is "Tandoor oven baked." *Id.* ¶¶ 23-26. Certain products' packaging also

 

3

contains statements that FGF's naan is "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition." *Id*. ¶24. These statements also appear on FGF's website. *Id*. ¶¶25-26.

Plaintiff alleges that she "has routinely purchased" FGF's naan products, including "the Stonefire Original Naan and Stonefire Original Mini naan from several stores, including Jewel and Mariano's." Compl. ¶12. She claims she and others were misled by FGF's statements that its naan products are "tandoor-baked" and "tandoor oven-baked to honor 2,000 years of tradition." *Id*. at ¶¶7, 12. Although she makes no claim to be an expert, she alleges that a tandoor oven is defined solely as "a small oven consisting of a clay or stone heating surface, surrounded with insulation (traditionally sand), and an outer housing (traditionally stone masonry or earth housing)." *Id*. ¶2. She claims that a "tandoor is cylindrical and narrows at the top to retain heat, with the cooking chamber being vertical above the heat source." *Id.* She asserts that FGF's advertising is misleading because FGF's patented oven does not fit her definition of a tandoor and because she claims she and others believed that FGF's naan was baked without "the conventional, automated, and commercial methods of baking bread." *Id*. ¶12.

## ARGUMENT

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, because Plaintiff's consumer fraud and fraudulent concealment actions sound in fraud, the heightened pleading requirements of Rule 9(b) apply, and Plaintiff must describe the "who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Plaintiff's allegations fail both the *Twombly/Iqbal* standard of plausible factual pleading and the basic requirements of Rule 9(b).

## I.      PLAINTIFF'S CONSUMER FRAUD CLAIMS (COUNTS I AND II) FAIL FOR MULTIPLE INDEPENDENT REASONS.

Plaintiff asserts consumer fraud claims under the Illinois Consumer Fraud Act (ICFA), and purports to bring claims on behalf of others under certain other states' statutes, which she claims are "similar." Compl. ¶46 n.8.[1] To state an ICFA claim, Plaintiff must prove "(1) a deceptive act or practice by [FGF]; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [FGF] intended [Plaintiff] and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 9(b) applies to ICFA deception claims, and thus Plaintiff must plead each element, and the details of the alleged fraud, with heightened particularity. *Camasta*, 761 F.3d at 737.

### A.      Plaintiff Fails To Plead Deception Under The Reasonable Consumer Standard

To state an ICFA claim as a private party, Plaintiff must plead with particularity how the challenged statement is plausibly deceptive. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive."). The test for whether a statement is deceptive is the reasonable consumer test. *E.g.*, *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758-59 (N.D. Ill. 2015) (granting motion to dismiss, finding that a reasonable consumer would not believe that "no refined sugars" claim meant that the product's sugar content was completely unprocessed sugar cane, which is inedible). Because Plaintiff does not and cannot meet that test, her claim fails.

To survive a motion to dismiss under the reasonable consumer standard, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few

---

[1]   Any claim Plaintiff purports to assert under "similar" laws would fail for the same reasons it fails under Illinois law. *E.g.*, *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) (analyzing claims under ICFA, and dismissing ICFA claims and claims under "similar" statutes in other states).

consumers.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Rather, Plaintiff "must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner*, 838 F.3d at 965). Thus, in *Jessani*, the Second Circuit had little difficulty in concluding at the motion to dismiss stage that "it is simply not plausible that a significant portion of the general consuming public acting reasonably would conclude that Monini's mass produced, modestly-priced olive oil" marketed as "Truffle Flavored" would contain truffles, "the most expensive food in the world." *Id.* at 19-20. The Ninth Circuit in *Ebner* similarly held at the motion to dismiss stage that reasonable consumers' common sense would make them aware that a portion of lip balm would be stuck below a tube's opening. 838 F.3d at 966. Other courts have determined on a motion to dismiss that reasonable consumers would not plausibly believe that insoles recommended to them by an automatic kiosk in a store were not "mass-produced," *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311 (S.D.N.Y. 2017) ("Plaintiff needed only to look at what he was buying to see that it was 'standardized,' 'mass produced,' and 'over-the-counter'"), *aff'd*, 710 F. App'x 43 (2d Cir. 2018), or that "consumers would believe that *Chef Michael's* [dog food] is made by a chef" have also been dismissed as implausible, *Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *11 (E.D. Mo. June 10, 2015).

Plaintiff's claims here are demonstrably more far-fetched than those rejected as implausible in *Jessani*, *Ebner*, *Kommer*, *Blue Buffalo*, and other cases granting motions to dismiss for failing to meet the reasonable consumer standard. Plaintiff claims that the "Tandoor-oven baked" label leads consumers to believe that FGF naan is "individually moved to and removed from the baking chamber by hand with the baker's undivided attention" and "baked

traditionally, by hand, without automated or commercial methods, and in low-volumes." Compl. ¶¶32, 35. But Plaintiff alleges that FGF's products are pre-packaged in plastic and sold in large grocery stores like Mariano's and Jewel and in big box stores such as Costco. *Id.* ¶¶12, 21(a)-(g). Any reasonable consumer who sees such pre-packaged bread products stacked on supermarket shelves would and should know they are produced using commercial methods. Indeed, it is utterly implausible that *anyone*, let alone a significant portion of reasonable consumers, could believe that a prepackaged item widely available at big box stores and grocery chains at a reasonable price was baked one-by-one, without "automated or commercial methods, and in low volumes." *See Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ("[T]he reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes.").

To the extent Plaintiff's claim is that it is misleading for FGF to call its tandoor tunnel oven a tandoor at all, *see* Compl. ¶¶27-29, her allegations similarly fail. It is readily apparent from the context in which consumers purchase FGF's naan that FGF's oven must be sufficiently mechanized and large-scale to produce the volume Plaintiff and other shoppers "routinely" see in grocery and big box stores. *See Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 5 C 1403, 2006 WL 1843370, at *2 (N.D. Ill. June 28, 2006) ("When determining whether a statement has the capacity to deceive, courts should examine the statement in the context of other information available to consumers."). In other words, consumers know that they are buying a mass-market product, pre-packaged in plastic on a supermarket shelf. It is thus implausible that *reasonable consumers* would believe that Plaintiff's personal interpretation of what defines a tandoor—which (she claims) is inherently incapable of commercial production— is nonetheless the type of oven in which FGF's "tandoor-baked" naan was baked.

7

In short, Plaintiff's claims of deception require the Court to believe that buyers of FGF's products have so little common sense that, upon seeing "tandoor baked" on a pre-packaged product in a grocery or big box store, they believe that product was not baked with commercial, automated baking methods but rather one or two at a time in a small, antiquated oven. Such allegations of deception do not pass the plausibility test, and must be dismissed with prejudice.

**B.   Plaintiff Fails To Adequately Allege That FGF's Tandoor-Baked Claims Are Material To Reasonable Consumers' Purchasing Decisions**

Plaintiff must also plausibly allege that FGF's challenged statements or concealments are material. *See Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *4 (N.D. Ill. July 1, 1999) (materiality is an element under ICFA). A claim of materiality must be objectively plausible: a representation is material if "a reasonable person could be expected to rely on a statement or omission in deciding to enter into a transaction." *Lateef v. Pharmavite LLC*, No. 12 C 5611, 2013 WL 1499029, at *3 (N.D. Ill. Apr. 10, 2013). To plead materiality, a plaintiff must do more than allege it conclusorily; she must plead sufficient facts to support the allegation. *Marvellous Day Elec. (S.Z.) Co. v. Ace Hardware Corp.*, No. 11 C 8756, 2013 WL 4565382, at *7 (N.D. Ill. Aug. 27, 2013) (dismissing ICFA and DTPA claims for failure to plead sufficient facts to show materiality of challenged statements, relying instead on conclusory assertions).

Here, Plaintiff does not allege facts sufficient to show that FGF's description of its naan as "tandoor-oven baked" is material. Instead, she alleges only conclusorily that this statement is material "because any reasonable consumer would have considered whether the product was traditionally baked in a tandoor oven, by hand, in low volumes, and without use of conventional and automated commercial baking methods." Compl. ¶75. This bald assertion of materiality is insufficient to satisfy her pleading burden. *Marvellous Day*, 2013 WL 4565382, at *7 (plaintiff failed to allege materiality of "patented" statement where plaintiff alleged only that "consumers

8

would prefer a product being claimed to have superior patented design qualities and consumers would associate the product and its source with such patented bulb shape and design qualities.").

Not only does Plaintiff fail to plead *facts* that would support her claim of materiality, her claim of materiality fails the plausibility test. *See Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *12 (N.D. Ill. Sept. 28, 1984) (statement that cheese slices contained 5 ounces of milk though some slices had less was not a material misrepresentation where it was "not of sufficient substance" to affect a consumer's purchasing decision). According to Plaintiff, a tandoor is a small, antiquated oven that, by definition, lacks the automation inherent in commercial baking processes. Whatever Plaintiff may subjectively think a tandoor is, it is utterly implausible that reasonable consumers, upon seeing the claim "tandoor baked" on FGF's pre-packaged naan in a grocery or big box store, would decide to purchase FGF's naan products in reliance on that same understanding of a tandoor oven, *i.e.*, because they too, believe it is baked "without use of conventional and automated commercial baking methods." Compl. ¶75.

Finally, as to FGF's statement that its baking methods are "to honor 2,000 years of tradition," this statement is mere puffery that (as a matter of law) cannot be material. *See Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (claim guacamole made in "The Authentic Tradition" was nonactionable puffery).

In short, Plaintiff fails to plead facts sufficient to establish materiality and her claim of materiality is simply not plausible. Each of those failings warrants dismissal of her ICFA claims.

### C.    Plaintiff's Conclusory Claim That She Paid A Premium Price Is Inadequate

Plaintiff also fails to plead the required element of actual damages. Plaintiff relies on a premium price theory, contending that she paid too much because the naan was—according to her definition—not tandoor baked. Compl. ¶13 ("Plaintiff was injured when she paid a purchase price or a price premium for the Mislabeled Naan that did not deliver what was promised.").

9

But formulaically reciting that a purportedly misleading aspect of a label led to the product commanding a premium price does not satisfy Plaintiff's pleading burden. Courts have repeatedly cautioned that, to state a "premium price" theory of damages, a plaintiff must allege facts showing that customers would have "paid a *higher* price for the [product] than they otherwise would have, absent deceptive acts." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (allegations that Sour Patch candy cost more than certain other candies failed to plead that Sour Patch would have cost less absent purported slack-fill). "[C]laims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017); *see also Giammanco v. Giammanco*, 625 N.E.2d 990, 998 (Ill. App. Ct. 1993) ("[T]o show injury, plaintiffs must allege facts which show the value of what they received was not equal to the value of what they were promised."); *see also Giammanco*, 625 N.E.2d at 1000 ("A fraud action does not afford a remedy for harm to one's pride."). In other words, to allege the requisite damages under her ICFA claims, Plaintiff must plausibly plead how the difference between Plaintiff's definition of "tandoor" and FGF's commercial tandoor objectively affected the value of the naan she purchased. Because Plaintiff does not and cannot plead that what she was promised had more value than what she bought, she has not pleaded actual damages under Illinois law.

### D. Plaintiff Lacks Standing As To Products She Has Not Purchased

Under both ICFA and Article III, a plaintiff has standing only as to products she has purchased. As one court aptly asked, "how could he possibly have been injured by representations made on a product he did not buy?" *Pearson v. Target Corp.*, No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012); *see also Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016) ("Plaintiffs cannot establish an injury-in-fact

caused by products plaintiffs did not purchase.")*. The only products Plaintiff specifically pleads

that she has purchased are "the Stonefire Original Naan and Stonefire Original Mini naan."

Compl. ¶12 (alleging purchases "including" those two products but not identifying others). As

Plaintiff does not allege with the specificity required by Rule 9(b) that she purchased any other

products, she cannot base her ICFA claims on the packaging of other products. Thus, if she is

allowed to maintain her ICFA claims (which she should not be), her claims must be limited to

those two products, as she has not plead facts to show standing with respect to any others.

### E. Plaintiff's Non-Illinois Claims Fail Because Plaintiff Lacks Standing And This Court Lacks Personal Jurisdiction As To Those Claims

"Plaintiffs fail to satisfy their burden of showing Article III standing for states in which

they do not reside and/or did not purchase the products at issue." *In re Dairy Farmers of Am.,

Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013);

*see also Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 735 (N.D. Ill. 2015). As Plaintiff does not

allege purchases outside Illinois, she lacks standing to invoke any other state's consumer laws.

Moreover, this Court lacks personal jurisdiction over FGF as to claims by non-resident

putative class members. The Supreme Court has identified two types of jurisdiction that courts

may exercise consistent with due process: general personal jurisdiction, which is "all-purpose,"

and specific personal jurisdiction, which is "case-specific." *Aspen Am. Ins. Co. v. Interstate

Warehousing, Inc.*, 90 N.E.3d 440, 444 (Ill. 2017). Because neither FGF entity is incorporated or

headquartered in Illinois, Compl. ¶¶14-15, there is no general jurisdiction here. *Daimler AG v.

Bauman*, 571 U.S. 117, 139 (2014). As for specific jurisdiction, the Supreme Court has expressly

held that a court may not exercise specific personal jurisdiction over non-resident plaintiffs'

claims simply because they are similar to a resident plaintiff's claims. *Bristol-Myers Squibb Co.

v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs were

prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents."). As Judge Kendall recognized just weeks ago, *Bristol-Myers* requires the dismissal for lack of personal jurisdiction of claims brought on behalf of an out-of-state class. *Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 WL 216616, at *4 (N.D. Ill. Jan. 16, 2019) ("The fact that the nonresident claims are based on the same product and marketing as the resident claims is insufficient."). This Court thus lacks personal jurisdiction as to claims on behalf of non-Illinois plaintiffs, and those claims must be dismissed.

### F. Plaintiff's Allegations Fail To Meet The Requirements of Rule 9(b).

Rule 9(b) applies to ICFA deception claims and Plaintiff must therefore allege the "who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737. Although Plaintiff claims she purchased FGF's naan "routinely," Compl. ¶12, Plaintiff never actually alleges "when" she was supposedly defrauded or for how long. This allegation is critical, as it will illuminate whether she can represent the classes she purports to represent and will underscore the lack of plausibility of her allegations. Indeed, if she purchased the products for years, Plaintiff will be even more hard pressed to claim plausibly that she did so because she thought they were baked one or two at a time in an antiquated oven. Her ICFA claims fail for this reason alone.

In addition, with respect to "what" and "where" she purchased, Plaintiff alleges only that she is a Chicago resident who purchased two specific products—the Stonefire Original Naan and Stonefire Original Mini naan—among others in "several stores, including Jewel and Mariano's." Compl. ¶12. Rule 9(b) requires that Plaintiff specifically allege, at a very minimum, the specific stores in which she allegedly purchased the products whose packaging she claims deceived her,

and at least the city and state in which they are located, so that it is clear which state's laws apply. And, if she bought any other FGF products on whose packaging she relies, she must say so. Rule 9(b)'s pleadings standard demands no less. *Camasta*, 761 F.3d at 737.

## II.     PLAINTIFF'S ILLINOIS' DTPA CLAIM (COUNT III) SIMILARLY FAILS

Plaintiff also fails to state claims under the Illinois Uniform Deceptive Trade Practices Act ("DTPA"), 815 ILCS 510/1, *et seq*. Compl. ¶84. Like ICFA claims, DTPA claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standards. *Nakajima All Co. v. SL Ventures Corp.*, No. 00 C 6594, 2001 WL 641415, at *4-7 (N.D. Ill. June 4, 2001) (Gettleman, J.). "When evaluating claims on their merits, courts analyze DTPA claims and ICFA claims under the same standard." *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 740 (N.D. Ill. 2011). Because Plaintiff's DTPA claims are based on the same conduct as her ICFA claims, they fail for the same reasons: she fails to allege plausibly that a reasonable consumer would be deceived or that the allegedly misleading claim is material.

Plaintiff fails to state a DTPA claim for the additional reason that she lacks standing to pursue injunctive relief, the only remedy the DTPA provides. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 857 (Ill. Ct. App. 2009) ("[T]he Deceptive Practices Act does not permit a party to recover monetary damages . . . ."). To pursue injunctive relief under the DTPA, a plaintiff must plausibly allege that the defendant's "conduct will likely cause h[er] harm in the future." *Camasta*, 761 F.3d at 740. But Plaintiff now plainly knows what FGF means when it says that its products are tandoor-baked, as she alleges in her complaint. She has even apparently read FGF's patent. *E.g.*, Compl. ¶27. As the Seventh Circuit held, "[s]ince [Plaintiff] is now aware of [the defendant's] sales practices, [s]he is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741; *accord Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) ("But,

already aware of Fannie May's alleged deceptive practices, Plaintiffs cannot claim they will be deceived again in the future."). In other words, Plaintiff cannot be harmed by FGF's claims in the future because she now knows that FGF's oven is not the small, antiquated oven she allegedly once thought, and thus she lacks standing to pursue the only relief available under the DTPA.

## III. PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM (COUNT IV) FAILS BECAUSE SHE ALLEGES NO MATERIALITY OR DUTY OF DISCLOSURE

"In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). As discussed above, Plaintiff offers only conclusory allegations that the characteristics of FGF's oven were material to consumers' purchasing decisions, so her fraudulent concealment claim fails for that reason alone.

But, Plaintiff also fails to plead circumstances that create a duty of disclosure. Such a duty arises in a "fiduciary or confidential relationship" or "out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* The *Connick* court held that a relationship between a car manufacturer and buyer "did not allege a duty to disclose material facts which could give rise to a claim for common law fraudulent concealment." *Id*. As the Seventh Circuit has held, "courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one," and the "standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (internal quotation marks omitted). "In short, the defendant accused of fraudulent concealment must exercise 'overwhelming influence' over the plaintiff." *Id.* at 572 (quoting *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 2001) (rejecting duty of disclosure between car dealer and customer)). "The heightened pleading standard of Rule 9(b)

also applies to fraudulent concealment claims." *Wigod*, 673 F.3d at 571.

Plaintiff nowhere alleges any facts, let alone particularized ones, that would give rise to a duty of disclosure under that demanding test. In fact, all Plaintiff pleads is the (lack of) relationship inherent in the routine business-consumer transactions that she alleges, which do not give rise to a duty of disclosure under Illinois law. *See, e.g.*, *Di Rito v. Metro. Life Ins. Co.*, 2018 IL App (1st) 173202-U, ¶36 ("We similarly decline to find a 'clearly dominant' position of superiority here, where Mr. Di Rito has alleged only an unremarkable asymmetry of information present in many dealings between a consumer and a company from which that consumer is purchasing a product."). Plaintiff's fraudulent concealment claim thus fails for failure to plead a duty of disclosure. Indeed, given that Plaintiff's claim is based on allegations of affirmative misstatements, not concealment, there is every indication that she is simply trying to relabel her claims to avoid the requirements of an affirmative fraud claim.

## IV.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT V) FAILS

Finally, Plaintiff's unjust enrichment claim fails. The Seventh Circuit has rejected unjust enrichment claims premised on purportedly deceptive labeling. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 520 (7th Cir. 2011) (the "claim that the defendants had a concerted plan to intentionally mislead consumers and conceal the truth about their cigarettes[] is insufficient to support a cause of action for unjust enrichment."). And in any event, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517. Plaintiff's other claims fail; so does her unjust enrichment claim. For both of these independent reasons, Plaintiff's unjust enrichment claim must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's claims with prejudice.

Dated: March 8, 2019                     KIRKLAND & ELLIS LLP

                                         /s/ Diana Torres
                                         Diana Torres

                                         *Counsel for Defendants FGF Brands
                                         (USA) Inc. and FGF Brands, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2019, I am electronically filing a true and correct copy of

the foregoing document, DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR

MOTION TO DISMISS PLAINTIFF'S COMPLAINT, via the Court's CM/ECF System, which

will automatically serve all counsel of record.


*/s/ Diana Torres*