IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY FRIEND, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 18 CV 7644 |
| v. | ) ) | Judge Robert W. Gettleman |
| FGF BRANDS (USA) INC., a Delaware corporation, and | ) ) ) ) | |
| FGF BRANDS, INC., a Canadian corporation, | ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

A traditional tandoor oven, plaintiff Emily Friend alleges, is cylindrical, insulated with sand, operated over a wood- or charcoal-burning fire, and so small that only one or two pieces of naan—a leavened flatbread popular in South and Central Asian cuisine—can be hand-baked at a time:[1]



---

[1] Images are taken from plaintiff's complaint.

At grocery stores across North America and Canada, defendants FGF Brands (USA) Inc., an American corporation, and FGF Brands, Inc., a Canadian corporation, sell packaged naan products, boasting that their naan is "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition":



That statement, plaintiff alleges, is deceptive: defendants do not bake their naan in a traditional tandoor oven, but in a patented, gas-heated commercial oven capable of baking 15,000 pieces of naan an hour:



2

Plaintiff alleges that there is no substitute for the flavor imparted by baking naan in a traditional tandoor oven, and that defendants misleadingly portray their naan products as a high-quality, hand-stretched, low-volume alternative to other mass-produced flatbreads, while in fact they mass-produce their naan on an endless conveyor belt.

Plaintiff's complaint, filed under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), on behalf of three putative classes of people who bought defendants' naan, claims that defendants: (1) violated the consumer fraud laws of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington (Counts I and II);[2] (2) violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count III); (3) fraudulently concealed that they mass-produced their naan in commercial ovens (Count IV); and (4) were unjustly enriched by their deceptive packaging (Count V). Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss all claims. To avoid dismissal, plaintiff's claims must be plausible; her claims are plausible if the court, taking the facts alleged in the complaint as true, can reasonably infer that defendants are liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**1      Consumer Fraud Laws**

Defendants argue that: plaintiff fails to state a claim under the consumer fraud laws because the allegedly mislabeled naan products could not plausibly deceive a reasonable consumer; plaintiff fails to plead fraud with particularity; plaintiff lacks Article III standing to

---

[2] Cal. Bus. & Prof. Code § 17200, et seq. (California); Fla. Stat. §501.201, et seq. (Florida); 815 Ill. Comp. Stat. 505/1, et seq. (Illinois); Mass. Gen. Laws Ch. 93A, et seq. (Massachusetts); Mich. Comp. Laws § 445.901, et seq. (Michigan); Minn. Stat. § 325F.67, et seq. (Minnesota); Mo. Rev. Stat. §407.010, et seq. (Missouri); N.J. Stat. § 56:8-1, et seq. (New Jersey); N.Y. Gen. Bus. Law § 349, et seq. (New York); Wash. Rev. Code § 19.86.010, et seq. (Washington). The parties agree that the standards for pleading consumer fraud are substantially identical for all these states.

assert claims as to the naan products that she did not purchase; and this court lacks personal jurisdiction over defendants as to the claims that plaintiff brings on behalf of non-Illinois class members. The court holds that: (1) plaintiff states a claim under the consumer fraud laws; (2) plaintiff has pleaded fraud with particularity; (3) plaintiff's Article III standing as to unpurchased products must be decided at class certification; and (4) defendants may file a new motion to dismiss for lack of personal jurisdiction after the Court of Appeals for the Seventh Circuit decides Mussat v. IQVIA, Inc., No. 19-1204.

### 1.1 Failure to state a claim

Plaintiff states a claim under the consumer fraud laws. As did the parties in In re 100% Grated Parmesan Cheese, the parties here "cite precedents applying these laws interchangeably and agree that, while they differ in certain particulars, all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer." 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (discussing claims brought under the consumer protection laws of nine states). Thus, for plaintiff to state a claim under the consumer fraud laws, it must be plausible that the allegedly mislabeled naan products could deceive a reasonable consumer.

If plaintiff had alleged that the packaging of Campbell's Homestyle Chicken Noodle Soup deceived her into thinking that the soup was home-cooked and home-canned, perhaps common sense or judicially-noticeable facts could justify dismissal: ubiquitous products with long histories are unlikely to deceive. But today's shoppers at Costco, Whole Foods, and Jewel-Osco expect to see tiny jars of artisanal jam made with locally-sourced fruit next to homogenous stacks of Wonder Bread. "Handmade" and "mass-produced" are not binary variables, but points on a continuum. Made-to-order street food occupies one end; Campbell's soup, the other.

All kinds of food products occupying the handmade-to-mass-produced continuum are sold in grocery stores and supermarkets. Even handmade products can come pre-packaged and wrapped in plastic. A reasonable consumer who sees naan pre-packaged and plastic-wrapped could believe that each piece had been baked in small quantities in traditional tandoor ovens—all the more so when that naan supposedly was "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition." And the erroneous belief that defendants bake their naan in traditional tandoor ovens may well be material to reasonable consumers: consumers who turn up their noses at food products that they deem mass-produced could plausibly pay a premium for small-batch, hand-made variants, including, as plaintiff alleges, for traditional tandoor oven-baked naan. To sustain her case at summary judgment or at trial, plaintiff will have to set forth competent evidence that consumers who buy defendants' products reasonably believe that they are buying naan baked in these traditional tandoor ovens. To survive a motion to dismiss, however, it is enough that she has alleged material differences between what she defines as a tandoor oven and the "tunnel oven" that defendants allegedly use—a gas-heated, conveyor belt-running commercial oven capable of baking 15,000 pieces of naan an hour.

### 1.2    Particularity

Plaintiff has stated the alleged fraud's circumstances with particularity. Fed. R. Civ. P. 9(b). She identifies: the content of the allegedly deceptive statements ("hand-stretched and tandoor oven-baked to honor 2,000 years of tradition"); the media in which those statements were made (the packaging of Stonefire Original Naan and Stonefire Original Mini Naan); the entities that made them (the defendant companies); the place she encountered them (at Mariano's and Jewel-Osco stores throughout Illinois); when they were made (from 2005 until today); and why they were made (as part of an advertising campaign to mislead consumers into paying a

5

price premium). Plaintiff need not plead the dates when she saw the statements or the addresses of the stores in which those statements were made: Rule 9(b) demands that she "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." Ackerman v. Northwestern Mutual Life Insurance Co., 172 F.3d 467, 469 (7th Cir. 1999). The many details in her complaint do just that.

### 1.3 Article III standing as to unpurchased products

Plaintiff seeks to represent classes that include all people who purchased any of seven different naan products, alleging that each product represents that defendants' naan is "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition." Plaintiff does not allege, however, that she purchased five of those seven products: Stonefire Roasted Garlic Naan, Stonefire Whole Grain Naan, Stonefire Organic Original Naan, Stonefire Ancient Grain Mini Naan, or Stonefire Naan Dippers. Defendants argue that plaintiff lacks standing under Article III of the Constitution to assert claims as to the five products she did not purchase.

Because plaintiff alleges that her injuries were caused by the same allegedly deceptive representations "that caused the injuries to all other members of the proposed class," whether plaintiff has Article III standing as to the products she did not purchase must be decided at class certification. Payton v. County of Kane, 308 F.3d 673, 682 (7th Cir. 2002), discussing Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999). Under Payton, plaintiff "may be entitled to represent a class suing" for injuries arising from all seven products if she "fulfill[s] all the requirements of Rule 23." Id. at 681. "A Rule 23 analysis . . . may suggest that there is little trouble with the named plaintiff[] representing this class under a standard 'commonality' or 'adequacy of representation' inquiry," id., and if the "common factor" of the allegedly deceptive naan packaging "assures that the representative has the same legal claim as the unnamed

parties," then "nothing in either standing doctrine or Rule 23 . . . automatically precludes use of the class action device." Id. at 681–82. See also Snyder v. U.S. Bank N.A., No. 16 C 11675, Doc. 132, at 9–11, 2019 WL 2189362, at *4–5 (N.D. Ill. May 21, 2019) (applying Payton and deferring decision on Article III standing until class certification). Defendants' challenge to Article III standing is denied without prejudice to being raised at class certification.

### 1.4  Personal jurisdiction for claims by non-Illinois class members.

Relying on Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773 (2017), defendant moves to dismiss for lack of personal jurisdiction as to the claims that plaintiff brings on behalf of non-Illinois class members. That motion is denied without prejudice. Federal courts across the country are split on whether Bristol-Myers Squibb bars a plaintiff from bringing "a nationwide class action when the court in question may only exercise specific jurisdiction over the defendant." Miszczyszyn v. JPMorgan Chase Bank, N.A., No. 18 C 3633, Doc. 31, at 5–7, 2019 WL 1254912, at *3 (N.D. Ill. Mar. 19, 2019) (collecting cases). The Court of Appeals may soon resolve that split: under Fed. R. Civ. P. 23(f), it approved an interlocutory appeal from an order striking non-Illinois members from a putative class. Mussat v. IQVIA, Inc., No. 19-1204; Mussat v. IQVIA Inc., No. 17 C 8841, Doc. 58, at 7–13, 2018 WL 5311903, at *1 (N.D. Ill. Oct. 26, 2018). Because any decision by this court would likely need to be revisited after Mussat, waiting will save the court and the parties time and resources. After the Court of Appeals decides Mussat, defendants may file a new motion to dismiss for lack of personal jurisdiction.

## 2  Illinois Deceptive Trade Practices Act

Plaintiff fails to state a claim under the Deceptive Trade Practices Act. Although defendants' alleged deception may give plaintiff Article III standing to seek an injunction, e.g., Le v. Kohls Department Stores, Inc., 160 F. Supp. 3d 1096, 1108–11 (E.D. Wis. 2016); Leiner v.

Johnson & Johnson Consumer Companies, Inc., 215 F. Supp. 3d 670, 672–73 (N.D. Ill. 2016), it does not follow that plaintiff has statutory standing under the Deceptive Trade Practices Act. That issue is controlled by Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 740–41 (7th Cir. 2014). Affirming the dismissal of a Deceptive Trade Practices Act claim against a clothing company that allegedly advertised normal retail prices as temporary sales, the Court of Appeals held that because the plaintiff was "now aware of [the defendant's] sales practices," the plaintiff was "not likely to be harmed by the practices in the future," thus making him ineligible for injunctive relief. Id. at 741. Camasta's logic is on point: having sued defendants for allegedly mislabeling their naan products, plaintiff is unlikely to walk into a Mariano's, pick up a package of defendants' naan, read "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition, and conclude that the naan had been baked in a traditional tandoor oven. Knowing what she now knows, she fails to state a claim under the Deceptive Trade Practices Act. See also Glazewski v. Coronet Insurance Co., 108 Ill. 2d 243, 253 (Ill. 1985) (affirming the dismissal of a Deceptive Trade Practices Act claim, reasoning that, "The plaintiffs know the problems associated with the [insurance] coverage, and, armed with that knowledge, can avoid it.").

**3      Fraudulent concealment**

Plaintiff states a claim for fraudulent concealment. Although defendants were neither her fiduciary, nor so "clearly dominant" because of their "superior knowledge" that they exercised "overwhelming influence" over her, Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 571–73 (7th Cir. 2012), they claimed to bake their naan in tandoor ovens. If they passed off that statement as "the whole truth," they had a duty to reveal that they baked their naan in commercial ovens. Newman v. Metropolitan Life Insurance Co., 885 F.3d 992, 1004 (7th Cir. 2018). As alleged in the complaint, defendants' packaging and website were part of an

advertising campaign designed to deceive consumers into thinking that they were buying naan baked in traditional tandoor ovens. Because that advertising campaign purported to be "the whole truth," but actually propagated a "misleading half-truth," defendants had a duty to disclose the material facts that they omitted. Id. (citation and quotation marks omitted).

**4       Unjust enrichment**

Plaintiff states a claim for unjust enrichment. Consumers who prefer hand-made, artisanal food products could plausibly pay a premium for naan baked in traditional tandoor ovens—ovens so small that only one or two pieces of naan can be hand-baked at a time. If, as plaintiff alleges, defendants deceived her into paying a premium for artisanal qualities that they did not give her, defendants were unjustly enriched. Unjust enrichment may or may not be an independent cause of action under Illinois law, see Cleary v. Philip Morris Inc., 656 F.3d 511, 516–18 (7th Cir. 2011), but that does not matter here because plaintiff's claim is tethered to viable claims for statutory and common law fraud.

## **CONCLUSION**

The motion to dismiss for failure to state a claim, lack of Article III standing, and lack of personal jurisdiction (Doc. 16) by defendants FGF Brands, Inc. (an American corporation) and FGF Brands, Inc. (a Canadian corporation) is granted in part and denied and part:

1. Defendants' motion to dismiss for failure to state a claim is denied except as to the Illinois Uniform Deceptive Trade Practices Act claim (Count III), which is dismissed.

2. Defendants' motion to dismiss for lack of Article III standing as to the products that plaintiff did not purchase is denied without prejudice. Defendants may file a new motion when plaintiff moves to certify the classes. The new motion must contain only those arguments fairly

9

presented in section I.D of defendants' memorandum supporting their motion to dismiss. See Doc. 17 at 10–11.

   3. Defendants' motion to dismiss for lack of personal jurisdiction over non-Illinois putative class members is denied without prejudice. After the Court of Appeals for the Seventh Circuit decides <u>Mussat v. IQVIA, Inc</u>., No. 19-1204, defendants may file a new motion. The new motion must contain only those arguments fairly presented in the second paragraph of section I.E of defendants' memorandum supporting their motion to dismiss. See Doc. 17 at 11–12.

   Defendants are directed to answer all counts of the complaint except Count III on or before July 8, 2019. The parties are directed to file a joint status report using this court's form on or before July 15, 2019. This matter is set for a report on status on July 23, 2019 at 9:00 a.m.

**ENTER:**  **June 12, 2019**

                **Robert W. Gettleman**
                **United States District Judge**