**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EMILY FRIEND, individually and on behalf
of a class of similarly situated individuals,

          *Plaintiff,*

    v.

FGF BRANDS (USA), INC., a Delaware
Corporation, and FGF BRANDS, INC., a
Canadian corporation.

          *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:18-cv-07644

Hon. Robert W. Gettleman

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
<u>ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

A.   INTRODUCTION ..................................................................................................... 1

B.   BACKGROUND ...................................................................................................... 2

C.   TERMS OF THE SETTLEMENT ........................................................................... 5

   1.   Class Definition ................................................................................................. 5

   2.   Monetary Relief ................................................................................................. 5

   3.   Notice of Settlement Administration Costs ........................................................ 6

   4.   Service Award for Class Representative and Attorneys' Fees for Class Counsel ............. 7

   5.   Opt-Outs and Objections.................................................................................... 7

   6.   Release of Liability ............................................................................................ 8

D.   THE CLASS ACTION SETTLEMENT APPROVAL PROCESS ............................ 9

E.   ARGUMENT............................................................................................................ 9

   1.   The Settlement Should Be Preliminarily Approved ........................................... 9

      a.   The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation ......................... 10

      b.   Continued Litigation Would Be Complex, Costly, and Lengthy............................... 12

      c.   Proposed Class Counsel Is Competent, Well-Informed, and Experienced; and Strongly Endorses the Settlement ......................... 13

      d.   The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery, and Arm's Length Negotiation ................................ 14

   2.   The Settlement Class Should be Provisionally Certified for Settlement Purposes........... 15

      a.   The Requirements of Rule 23(a) Are Satisfied........................................ 16

         (1)   Numerosity................................................................................ 16

         (2)   Commonality............................................................................. 16

         (3)   Typicality .................................................................................. 17

         (4)   Adequacy of Representation ..................................................... 18

      b.   The Requirements of Rule 23(b)(3) Are Satisfied .................................. 19

         (1)   Common Questions Predominate ............................................. 19

         (2)   Class Treatment of Plaintiff's Claims is Superior ................... 20

         (3)   Plaintiff's Counsel Should Be Appointed Class Counsel ........ 21

         (4)   The Court Should Approve the Proposed Notice, and Direct the Settlement Administrator to Provide Notice to the Settlement Class...................................... 22

         (5)   The Court Should Schedule The Fairness Hearing................... 24

F.   CONCLUSION......................................................................................................... 25

i

## TABLE OF AUTHORITIES

### Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................... 14
*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................... 15, 20
*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ..................................................................... 9, 10, 14
*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006) .......................................................................... 13
*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................. 12
*Cowen v. Lenny & Larry's, Inc.*,
   2018 WL 7456041 (N.D. Ill. Nov. 1, 2018) ......................................................... 17
*CV Reit, Inc. v. Levy*,
   144 F.R.D. 690 (S.D. Fla. 1992) .......................................................................... 18
*Fogarazzao v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) .......................................................................... 17
*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................. 20
*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2014) .................................................... 18
*Harris v. Circuit City Stores, Inc.*,
   2008 WL 400862 (N.D. Ill. Feb. 7, 2008) ........................................................... 21
*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ................................................... 10, 11, 15, *Passim*
*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................. 14
*In re Northfield*,
   2012 WL 366852 (N.D. Ill. 2012) ........................................................................ 23
*In re Southwest Airlines Voucher Litig.*,
   2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ....................................................... 11
*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................... 14
*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ..................................................................... 9, 10, 13
*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
   300 F.R.D. 67 (D. Conn. 2014) ............................................................................ 20
*Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C,
   2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ....................................................... 10
*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ........................................................................... 15
*Martin v. Reid*,
   818 F.3d 302 (7th Cir. 2020) ............................................................................... 17

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) ................................................................. 16
*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ....................................................... 14
*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................... 22
*Parker v. Risk Mgmt. Alternatives, Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002) ........................................................... 17, 18
*Reliable Money Order, Inc. v. McKnight Sales Co.*,
   704 F.3d 489 (7th Cir. 2013) ...................................................................... 21
*Roach v. T.L. Cannon Corp.*,
   773 F.3d 401 (2d Cir. 2015) ....................................................................... 19
*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................... 12, 13
*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ............................................................ 9, 13, 14
*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ................................................................................ 17
*Zyburo v. NCSPlus, Inc.*,
   44 F.Supp. 3d 500 (S.D.N.Y. 2014) ..................................................... 18, 19

## Rules

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 16
Fed. R. Civ. P. 23(a)(2) ..................................................................................... 16
Fed. R. Civ. P. 23(a)(3) ..................................................................................... 16
Fed. R. Civ. P. 23(a)(4) ..................................................................... 16, 18, 19
Fed. R. Civ. P. 23(c)(2) ..................................................................................... 22
Fed. R. Civ. P. 23(e)(1) ..................................................................................... 23
Fed. R. Civ. P. 23(e)(2) ..................................................................................... 10
Fed. R. Civ. P. 23(g)(1) ..................................................................................... 21
Rule 23 .............................................................................................................. 21
Rule 23(a) .............................................................................. 16, 17, 18, 19
Rule 23(b) .............................................................................. 16, 19, 20, 22
Rule 23(e) .......................................................................................................... 22
Rule 23(g) .......................................................................................................... 21

## Other Authorities

H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) ............................. 9, 15
Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................. 16

## A.  INTRODUCTION

The present case is a putative class action in which Plaintiff Emily Friend ("Plaintiff")[1] alleges that Defendants FGF Brands (USA), Inc. and FGF Brands, Inc. (collectively, "Defendants" or "FGF") falsely advertised certain naan products as being baked in a traditional tandoor oven to honor 2,000 year of tradition when, as Plaintiff alleges, Defendants actually baked that naan on an "endless" conveyor belt that rotates through a gas-fired commercial oven that Defendants patented. Plaintiff has alleged that this marketing practice violates various statutory and common law claims sounding in fraud and unjust enrichment. Defendants deny Plaintiff's allegations and deny any deceptive acts or wrongful behavior.

The litigation to this point has been both in-depth and contentious.  After fully briefing Defendants' motion to dismiss, which this Court largely denied, the parties have propounded written discovery, have each provided multiple rounds of supplemental responses, have each filed and briefed motions to compel (with multiple appearances before Magistrate Judge Valdez), have completed the deposition of Plaintiff, and have produced and reviewed thousands of pages of production.

The settlement negotiations were similarly hard fought.  After fourteen hours of arms-length negotiations before the Hon. Judge Denlow (Ret.), a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois, the Parties agreed upon the principal terms of the proposed Settlement Agreement, which they later memorialized in the Settlement Agreement that is the subject of this motion.[2]

---

[1] Capitalized terms not defined herein have the meaning given them in the Settlement Agreement submitted herewith.
[2] The arguments contained in this brief are made for settlement purposes only. Although Defendants do not oppose Plaintiff's motion, Defendants have informed Plaintiff that: (i) They reserve their right to argue that class certification would be improper if this case proceeded on the merits, and that the elements necessary for class certification are not

## B.  BACKGROUND

On November 16, 2018, this matter was initially brought by Plaintiff, individually and on behalf of putative class members (the "Litigation").  The Complaint alleged that Defendants intentionally mislabeled certain of their naan products ("Products")[3] as being "Tandoor oven baked" and "HAND-STRETCHED AND TANDOOR OVEN-BAKED TO HONOR 2,000 YEARS OF TRADITION" to take advantage of the consumer appetite for artisanal and authentic, small-batch, handcrafted foods. Complaint (Dkt. 1), ¶¶ 17-26.  Plaintiff has alleged that tandoor ovens consist of a clay or stone heating surface, surrounded with insulation (traditionally sand) and an outer housing (traditionally stone masonry or earth housing).  According to Plaintiff, they are cylindrical and narrow at the top to retain heat, with the cooking chamber being vertical above the heat source, and typically burn charcoal or wood.  Because of the involved, hands-on attention required, a baker can typically only bake one or two pieces of naan at once in a tandoor oven.  A traditional tandoor oven is depicted below in Figure 1, and a modern tandoor oven is depicted below in Figure 2.



met in this case, (ii) Although the parties have agreed to propose a settlement on behalf of a nationwide class, Defendants reserve their right to argue that this Court should not preside over a proposed nationwide class for any purpose other than settlement, and (iii) Although Defendants support preliminary approval and have reviewed this brief as to form, they reserve their right to contest any representations made by Plaintiff herein as it relates to the merits of the lawsuit or the elements of class certification.

[3] "Products," as used in the Settlement Agreement, means (1) Stonefire Original Naan; (2) Stonefire Roasted Garlic Naan; (3) Stonefire Whole Grain Naan; (4) Stonefire Organic Original Naan; (5) Stonefire Original Mini Naan; (6) Stonefire Ancient Grain Mini Naan; (7) Stonefire Naan Dippers; and (8) any other Naan that Defendants produced that was marketed or sold in the United States and that was represented to the purchaser as Naan baked in a tandoor oven.



**Figure 2**

Plaintiff has alleged that the Products are not actually baked in a tandoor oven, but are mass produced on an "endless" conveyor belt oven that rotates through a gas-fired commercial oven that Defendants patented, which commercial oven is capable of producing 15,000 pieces of naan per hour. (Dkt. 1), ¶¶ 27-32. Figure 3 depicts the oven system that Defendants allegedly uses to bake the Products.



**Figure 3**

3

Plaintiff alleged that Defendants' labeling practice constituted violations of state consumer fraud acts with respect to a multi-state class (Count I), the Illinois Consumer Fraud and Deceptive Business Practices Act with respect to an Illinois subclass (Count II), the Illinois Uniform Deceptive Trade Practices Act with respect to an Illinois subclass (Count III), fraudulent concealment with respect to a national class and Illinois subclass (Count IV), and unjust enrichment with respect to a national class and Illinois subclass (Count V).

On March 8, 2019, Defendants moved to dismiss the complaint. (Dkt. 16-17). With the exception of Count III, the Court denied Defendants' motion in its entirety, noting:

> A reasonable consumer who sees naan pre-packaged and plastic-wrapped could believe that each piece had been baked in small quantities in traditional tandoor ovens—all the more so when that naan supposedly was "hand-stretched and tandoor oven-baked to honor 2,000 years of tradition." And the erroneous belief that defendants bake their naan in traditional tandoor ovens may well be material to reasonable consumers: consumers who turn up their noses at food products that they deem mass-produced could plausibly pay a premium for small-batch, hand-made variants, including, as plaintiff alleges, for traditional tandoor oven-baked naan.

(Dkt. 30), at 5.

Meanwhile, and through the Parties' June 22, 2020 mediation, the Parties engaged in voluminous and wide-ranging discovery, serving and responding to multiple sets of written discovery requests, meeting and conferring regarding same, deposing Plaintiff, briefing multiple motions to compel, and serving multiple subpoenas on third-party entities that sold the Products.

In June 2020, the Parties agreed to attend private mediation in an attempt to resolve this case on behalf of the Settlement Class. The parties ultimately scheduled mediation for June 22, 2020 in Chicago, Illinois before the Hon. Judge Denlow [Ret.], a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois. The Parties exchanged lengthy confidential mediation statements thoroughly articulating their respective

positions on each of the key legal issues relating to liability, class certification, and damages, and each party provided a proposed term sheet ahead of mediation.

At mediation, the Parties discussed their competing views on various issues, including the relief to which the Settlement Class is potentially entitled and the prospects of class certification, and eventually began exchanging counterproposals on key aspects of the Settlement. The Parties' negotiations were at all times highly adversarial and at arm's length. After fourteen hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and thereafter signed a binding term sheet, which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator. In the process of documenting the term sheet, the Parties again sought and received the assistance of [Ret.] Judge Denlow.

## C. TERMS OF THE SETTLEMENT

The Settlement Agreement contains the following key terms:

### (1) Class Definition

Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court provisionally certify the following Settlement Class:

All purchasers of the Products, from November 16, 2013 through the date the Court enters an order preliminarily approving the Settlement Agreement. Specifically excluded from the Settlement Class are: Defendants and their affiliates, employees, officers, directors, agents, representatives and their immediate family members; and class counsel, the judge and the magistrate judge who have presided over the Action, and their immediate family members.

**Exhibit A**, Settlement Agreement (herein "SA") § 2.31.

### (2) Monetary Relief

Pursuant to the terms and conditions set forth in the Settlement Agreement, Defendants have agreed to pay, on a non-reversionary basis, cash in the amount of $1,895,000.00 (One Million, Eight Hundred and Ninety-Five Thousand Dollars and Zero Cents) to create the Settlement Fund for the benefit of Settlement Class Members, which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee and Expense Award, and any Service Award, and will be in full satisfaction of all of Defendants' monetary obligations under the Settlement and Settlement Agreement. *Id.* at § 4.01.

Subject to the terms of the Settlement Agreement, Authorized Claimants will be entitled to receive a payment of $2.50 for each Product purchased during the Class Period, with no additional proof of purchase required beyond a Claim Form including an attestation as to the purchase. *Id.* at § 4.02. Class members without proof of purchase may make claims for a maximum of five products, and Class members with proof of purchase will be permitted to make claims for every corresponding purchase. *Id.* Class members will receive a pro rata adjustment upward or downward depending on the number of Valid Claims submitted, and the amount that remains in the Settlement Fund after other specified payments are made.[4] *Id.* § 4.03; *see also id.* §§ 4.05-4.09 (timing of and process for payment distribution). Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund or Available Cash Award Total shall be returned or refunded to Defendants.[5] *Id.* § 4.01.

**(3) Notice of Settlement Administration Costs**

Defendants have agreed that all Notice and Administrative Costs to the Settlement Administrator shall be paid from the Settlement Fund. *Id.* § 4.01. The Settlement Fund will be used to pay the cost of class notice and claims administration in the amount of up to $500,000.00,

---

[4] I.e., Notice and Administration Costs, the Attorneys' Fee and Expense Award, and Plaintiff's Service Award.
[5] Unless the Settlement is terminated pursuant to Section 13 of the Settlement Agreement.

unless otherwise ordered by the Court. *Id*. § 8.01. The form of the Class Notice and the Claim Form, and information concerning the Settlement Class Notice Program, are discussed in detail below.

**(4) Service Award for Class Representative and Attorneys' Fees for Class Counsel**

Defendants have agreed to pay from the Settlement Fund, subject to Court approval, a reasonable Service Award to Plaintiff, which Plaintiff submits is based on the time and effort she expended in pursuing this action, and in fulfilling her obligations and responsibilities as Class Representative. *Id*. § 5.01. Defendants have further agreed to pay from the Settlement Fund a reasonable Attorneys' Fee and Expense Award to proposed Class Counsel, as may be awarded by the Court. *Id*. § 5.03.

Class Counsel will make an application to the Court for a Service Award payment to Plaintiff in an amount not to exceed $7,500.00 (Seven Thousand, Five Hundred Dollars and Zero Cents). *Id*. § 5.01. Class Counsel will also make an application to the Court for a reasonable Attorneys' Fee Award in an amount not to exceed 33.33% of the Settlement Fund, plus reasonable expenses incurred in the Action. *Id*. § 5.03. If approved, all Attorneys' Fees and Costs will be paid from the Settlement Fund. The Settlement Agreement is neither dependent nor conditioned upon the Court approving Plaintiff's and Class Counsel's requests for the aforementioned payments; nor upon the Court awarding the particular amounts sought. *Id*. § 5.04.

**(5) Opt-Outs and Objections**

Any Settlement Class Member who wishes to object to the Settlement must timely file a written Objection with the Court no later than the Opt-Out and Objection Deadline,[6] as set forth in the proposed order accompanying this Motion. *Id*. § 9.03. The Settlement Class Member must

---

[6] Forty-five (45) days from the Settlement Notice Date. SA § 2.21. The Settlement Notice Date shall be twenty-eight (28) days after an Order Granting this Motion for Preliminary Approval is entered. SA § 2.38.

also timely serve a copy of the written Objection via first-class U.S. mail on both Class Counsel and Defense Counsel. *Id*. Any Settlement Class Member whose Objection fails to comply with all of the requirements set forth in Section 9 of the Settlement Agreement will be deemed by the Parties and the Settlement Administrator to have waived any Objections and shall be foreclosed from making any Objection to the Settlement. *Id*. Any Objections so waived will be deemed by the Parties and the Settlement Administrator to be wholly ineffectual, null, and void.

Any Settlement Class Member who does not wish to participate in the Settlement must submit a Request for Exclusion to the Settlement Administrator stating his or her intention to be "excluded" from the Settlement. *Id*. § 9.01. The Request for Exclusion must be postmarked or submitted electronically no later than the Opt-Out and Objection Deadline (*supra*), as set forth in the proposed order accompanying this Motion. *Id*. The Request for Exclusion must comply with all of the requirements set forth in Section 9 of the Settlement Agreement. *Id*.

The Class Notice provided to the Settlement Class will contain language consistent with the provision set forth in Section 9 of the Settlement Agreement concerning objections and opt-outs. *Id.*

### (6) Release of Liability

As of the date of the Final Approval Order and Judgment entered by the Court, the Released Persons—which are defined to include Defendants and their resellers, retailers, wholesalers, distributors, and others—will, in exchange for the monetary relief described above, be deemed fully released and forever discharged from any and all Released Claims as set forth in Section 2.28 of the Settlement Agreement, except that no claims of Settlement Class Members who timely and properly request exclusion will be released. *Id*. §§ 2.26, 10.03.

## D.  THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements—particularly in class actions and other complex matters where the inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases).

## E.  ARGUMENT

The proposed Settlement, negotiated at arm's length by competent, experienced counsel, provides Settlement Class Members substantial monetary relief in a prompt and efficient manner. The Court should (1) preliminarily approve the Settlement, (2) provisionally certify the Settlement Class, (3) appoint Plaintiff as Class Representative and her counsel as Class Counsel, (4) approve the proposed Settlement Class Notice Program, and (5) schedule the Fairness Hearing.

### (1) The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs, Inc. v.*

*DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the district court need only assess whether the proposed settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id*.

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable, and adequate: (a) the strength of the plaintiff's case compared to the amount of the settlement offer; (b) the length, complexity, and expense of further litigation; (c) the opinion of competent counsel; and (d) the stage of the proceedings and amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable, and adequate, warranting its preliminary approval.

### a. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement

10

is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The $1.85 million offered by the Settlement is substantial, and provides for each Settlement Class Member who submits a Valid Claim to receive a Cash Award. Plaintiff continues to believe that her claims against Defendants have merit; it is, however, clear to Plaintiff that the legal uncertainties associated with continued litigation may pose substantial risk of non-recovery to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). These various risks include, but are not limited to, questions of whether the packaging was likely to mislead a reasonable consumer is common to the claims of every class member, whether the damages model is compatible with the theory of liability, whether the conduct at issue was willful, whether the same questions of law and fact predominate over questions affecting individual members, and whether there are reliable and feasible ways of identifying those who fall within the class.

Specifically, and among other arguments, Defendants have contended that Plaintiff will not be able to show that reasonable consumers are likely to be materially deceived because they are insufficiently familiar with what constitutes a tandoor oven and, to the extent consumers have an understanding of what a tandoor oven is, that understanding will not be uniform. Defendants also contend that reasonable consumers would not be deceived when purchasing products in plastic wrap that otherwise appear mass-produced, and that regardless of how the Products are baked, they have the same characteristics of naan baked in a traditional tandoor oven. Defendants also contend that, even assuming a consumer is confused by the product claims, such claims are not material to consumer purchases. Defendants have earned multiple awards and other recognition

11

for the quality of their products, and have substantial evidence to support their position that consumers purchase the Products because of their high quality ingredients and authentic texture and taste, not because of the allegedly perceived shape or capacity of the ovens in which the Products are baked. Defendants also contend that they have substantial evidence supporting the truthfulness of the "tandoor baked" claim, and have obtained patents (including from India) referring to their ovens as tandoor ovens and have earned awards for innovation that also expressly refer to their ovens as tandoors.

Plaintiff maintains that Defendants has more to lose at trial and faces more risks, but nonetheless acknowledges that settling now reduces risks to herself and the Class Members as well as to Defendants.

### b. Continued Litigation Would Be Complex, Costly, and Lengthy

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy, very expensive, and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment, and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well deserved reputation as being most complex."). For example, Plaintiff would need to further consult with economists to assist in performing a price premium analysis to assess damages to the class, and would need to further consult with industry and consumer survey experts. All experts will have to prepare reports and sit for depositions, which will be followed by extensive and expensive *Daubert* motions directed

at the experts. The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $1.85 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal. Further, Plaintiff's counsel has been retained by several additional class members residing in Illinois and other states who, in the absence of settlement, would bring additional lawsuits against Defendants, which would result in more costs on both sides.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The Settlement is also endorsed as adequate and fair by [Ret.] Judge Denlow, who actively oversaw a mediation between the Parties that lasted more than 14 hours. **Exhibit B**, Declaration of [Ret.] Judge Denlow. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### c. Proposed Class Counsel Is Competent, Well-Informed, and Experienced; and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id*.

Plaintiff's counsel and proposed Class Counsel, Carlson Lynch LLP (with Katrina Carroll as Lead Counsel) and Gordon Law Offices, have significant experience in consumer class action litigation and have been appointed and served as class counsel in similar consumer mislabeling

cases. *See* Firm Resumes (attached hereto as **Exhibit C** and **Exhibit D**). Class Counsel strongly endorse this Settlement, which was negotiated at arm's length before an experienced mediator.

Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### d. The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery, and Arm's Length Negotiation

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly two years of hard-fought litigation and informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by Defendants concerning every aspect of this case. Armed with this information, Plaintiff and her counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986).

Mediation was also hard-fought. While the Parties were able to reach an agreement in principle after fourteen hours of extensive negotiations with the assistance of Judge Denlow, that Settlement Agreement was only possible because it was based on a robust and fully informed factual background. Because the Settlement is the product of "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."). Judge Denlow's declaration demonstrates that it is the product of arm's length negotiations following significant litigation efforts. **Exhibit B**, Declaration of [Ret.] Judge Denlow.

Accordingly, the final factor weights in favor of finding the Settlement fair, reasonable and adequate.

**(2) The Settlement Class Should be Provisionally Certified for Settlement Purposes**

The Court should find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT&T Mobility*, 270 F.R.D. at 340-45 (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the rights of Settlement Class Members to submit a Claim Form and recover a Cash Award if the Settlement is finally approved, to object to and/or be heard on the Settlement's fairness at the Fairness Hearing, and to opt out of the Settlement.

For the reasons below, the Court should provisionally certify the Settlement Class—defined *supra*— under Rule 23(a) and Rule 23(b)(3).

### a. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (1) the proposed settlement class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *In re AT&T*, 270 F.R.D. at 340-44. While Defendants reserve all arguments in the event of further litigation, the settlement class satisfies each of these requirements for settlement purposes.

#### (1) Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of millions of individuals dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty or more class members is generally sufficient to establish numerosity). Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

#### (2) Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is

16

central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).

Plaintiff contends that many questions of law and fact are common to the Settlement Class in this case, including but not limited to: 1) Whether Defendants knew or should have known that their conveyor-belt commercial oven was not a tandoor oven; 2) Whether Defendants wrongfully represented that the Products are "Tandoor oven baked" and "Tandoor-Oven Baked to Honor 2,000 Years of Tradition," 3) Whether those representations are likely to deceive a reasonable consumer; and 4) Whether a reasonable consumer would consider, in purchasing the Products, the fact that the Products were mass-produced in a commercial conveyor-belt oven rather than in a tandoor oven. Accordingly, the commonality requirement of Rule 23(a) is satisfied.  *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement.").

Accordingly, approval of a nationwide settlement class is appropriate.  See *Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2020) (affirming approval of nationwide settlement class of consumer claims, including claims under the Illinois Consumer Fraud Act and similar laws of other states); *Cowen v. Lenny & Larry's, Inc.*, No. 1:17-cv-01530, 2018 WL 7456041 (N.D. Ill. Nov. 1, 2018) (Granting preliminary approval of nationwide settlement class for consumer mislabeling claims, including those for violation of the Illinois Consumer Fraud Act).

### (3) Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiff submits that her claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. Plaintiff and each Settlement Class Member purchased the Products with the same allegedly deceptive labelling, each of the Products were allegedly baked in the same type of oven, and each of the consumers was similarly misled. Moreover, Plaintiff and the putative Settlement Class members all seek the same statutory and actual damages. Accordingly, the typicality requirement of Rule 23(a) is satisfied for purposes of preliminary approval.

### (4) Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

Plaintiff submits that the first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign*, 2009 U.S. Dist. LEXIS 73869, at *15-16; *Zyburo v. NCSPlus, Inc.*, 44 F.Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same allegedly deceptive labeling and seeks the same monetary relief for herself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who is experienced in class actions generally and consumer mislabeling litigation in particular. *See* **Exhibit C** and **Exhibit D**, Firm Resumes. Plaintiff's counsel has successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id.* Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied for purposes of preliminary approval.

### b. The Requirements of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiff seeks provisional certification under Rule 23(b)(3), Plaintiff must additionally show (1) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T Mobility*, 270 F.R.D. at 344-45. Both requirements are easily satisfied by the proposed Settlement Class.

### (1) Common Questions Predominate

Plaintiff submits that the predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See Roach v. T.L. Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

The entire case is focused on Defendants' alleged common practice of mislabeling the Products to induce consumers into believing the Products were baked traditionally and handmade

in small batches in a tandoor oven when they were actually mass produced on a commercial "endless conveyor belt" oven that Defendants patented.

Thus, the central questions in this case— whether Defendants' labelling was misleading to consumers and, if so, to what extent— are all capable of resolution on a class-wide basis by looking to the Defendants' labeling and manufacturing documentation and consulting with Plaintiff's economists and other industry experts with respect to consumer damages.

Because common questions predominate over individual ones, for purposes of preliminary approval, the predominance requirement is satisfied.

### (2) Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem*, 521 U.S. 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

Plaintiff submits that a class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claims are shared by thousands of other consumers, each of whom purchased Products that were allegedly mislabeled and baked in the same fashion. The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties

20

by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, Plaintiff believes it is unlikely that any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for the purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### (3) Plaintiff's Counsel Should Be Appointed Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law; and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n. 7 (7th Cir. 2013).

In this case, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, Plaintiff's counsel has devoted substantial time, effort, and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations, continuing through litigation and discovery, and ending with arm's length settlement negotiations and mediation. Second, as discussed above, Plaintiff's counsel has extensive experience in complex class action litigation, in district courts of the Seventh Circuit and elsewhere, and has served as class counsel in other cases involving the mislabeling of consumer products.

Accordingly, the Court should appoint Carlson Lynch LLP (with Katrina Carroll as lead counsel) and Gordon Law Offices, Ltd. as Class Counsel.

**(4) The Court Should Approve the Proposed Notice, and Direct the Settlement Administrator to Provide Notice to the Settlement Class**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.*, *supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); *see also In re AT&T Mobility*, 270 F.R.D. at 352.

Pursuant to the Settlement Agreement, the Class Notice will provide information to Settlement Class Members regarding the filing of claim forms, SA § 8, and additionally will: (a) describe the essential terms of the Settlement; (b) disclose Class Counsel's intention to file an application with the Court for a Service Award to the Class Representative; (c) provide information regarding the application for an Attorneys' Fee and Expense Award that Class Counsel intends to file with the Court; (d) indicate the time and place of the hearing to consider final approval of the Settlement, (e) the method for objection to and/or opting out of the Settlement; (f) explain the procedures for allocating and distributing the Settlement Fund; and (g) prominently display the address of Class Counsel and the procedure for making inquiries, *id.*; *see also In re AT&T Mobility*, 270 F.R.D. at 352 (the notice should contain specific information, in plain, easily understood

22

language, concerning the nature of the action and the rights of class members). A proposed draft of the Class Notice is submitted herewith as Exhibit B to SA.

Claim Forms will be available from the Settlement Administrator, upon request, and on the Settlement Website. Exhibit A to the SA, sample claim form. Settlement Class Members will be able to submit their respective Claim Forms through the Settlement Website or by U.S. postal mail. *Id*. §§ 7.04; 8.03. In order to file a Valid Claim, as necessary to receive a Cash Award, Settlement Class Members must sign and return by the Claim Deadline a fully completed Claim Form. *Id*. § 7.05.

The Settlement Agreement requires the Settlement Administrator to design and conduct a nationwide publication website-based Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and Settlement Agreement. *Id*. § 8.02; *see* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"); *In re Northfield*, 2012 WL 366852, at *7. The media-based delivery of the Settlement Class Notice Program will be completed within 30 days of the Settlement Notice Date. SA § 8.02.

The notice will direct Settlement Class Members to the Settlement Website, which will contain the Class Notice and an electronic version of the Claim Form that can be submitted online, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents (including the Complaint, this Motion, all Orders of this Court concerning the Settlement, and Plaintiff's forthcoming motions for attorneys' fees and service award and final approval of the Settlement). *Id*. § 8.03.

The proposed Settlement Class Notice Program is robust, comprehensive, and informative, effectuating the Class Notice through regional and national publication, the Settlement Website,

and the toll-free Settlement telephone number; and providing for the filing of Claim Forms by postal mail and on the Settlement Website. Accordingly, Plaintiff respectfully requests that the Court, as set forth in the Declaration of Carla A. Peak at KCC Class Action Services LLC, attached hereto as **Exhibit E**, and in the proposed order accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (a) is the best practicable notice; (b) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Litigation and of their right to object or to exclude themselves from the proposed settlement; (c) is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice; and (d) meets all requirements of applicable law.

Further, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, approve the Class Notice and Claim Form, appoint KCC Class Action Services LLC as the Settlement Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with the Settlement Class Notice Program by the Notice Date, require the Settlement Administrator to file proof of compliance with the Settlement Class Notice Program no later than five (5) calendar days after the Claims Deadline, and set a Claims Deadline 90 days from the Settlement Notice Date.[7]

### (5) The Court Should Schedule The Fairness Hearing

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Fairness Hearing on final approval of the Settlement and Settlement Agreement to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court, and to determine the reasonableness of the requested Attorneys' Fee and Expense and Service Awards. *See* SA § 9.04. Plaintiff respectfully

---

[7] The Settlement Notice Date shall be twenty-eight (28) days after an Order Granting Preliminary Approval is entered. SA § 2.35.

requests that the Court schedule the Fairness Hearing to be held 110 days after the Court enters an order granting this motion or at another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Finally, the Court should order all documents in support of final approval of the Settlement Agreement, and in response to any objections filed by Settlement Class Members, to be filed with the Court on or before seven days prior to the Fairness Hearing, as set forth in the proposed order accompanying this Motion.

## F. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and, consistent with the proposed order attached hereto, enter an order:

(1)     Preliminarily approving the Settlement;

(2)     Provisionally certifying the Settlement Class and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

(3)     Approving the Class Notice and Settlement Class Notice Program, appointing KCC Class Action Services as Settlement Administrator, ordering that the Settlement Class Notice Program be effectuated, and ordering that proof of compliance with the Settlement Class Notice Program be filed by the Settlement Administrator no later than fourteen (14) days before the Fairness Hearing;

(4)     Setting a Notice Date of twenty-one (28) days after the Preliminary Approval Date;

(5)     Setting a Claims Deadline of ninety (90) days after the Settlement Notice Date;

(6)     Establishing the procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class, and setting an Opt-Out and Objection Date of forty-five (45) days after the Settlement Notice Date;

(7)     Ordering the motion for final approval and any response to any objection to be filed with the Court no later than fourteen (14) days prior to the Fairness Hearing;

(8)     Directing Class Counsel to file any application for an Attorneys' Fee and Expense Award and Service Award at least fourteen (14) days prior to the Fairness Hearing;

(9)     Ordering the Settlement Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than seven (7) days after the Opt-Out and Objection Date and to then provide Class Counsel with an affidavit attesting to the completeness and accuracy thereof to be filed no later than fourteen (14) days before the Fairness Hearing;

(10)     Preliminarily enjoining Settlement Class Members who have not excluded themselves from initiating or participating in litigation related to the underlying facts of this case, consistent with the language in the proposed order attached to this Motion;

(11)     Staying all proceedings, except those related to effectuating this Settlement, pending final determination of whether the Settlement should be approved; and

(12)     Scheduling a Fairness Hearing for 110 days after the entry of this Order for Preliminary Approval or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

DATED: September 28, 2020                    By: */s/ Katrina Carroll*
                                             Katrina Carroll
                                             Kyle A. Shamberg
                                             Nicholas R. Lange
                                             **CARLSON LYNCH LLP**
                                             111 W. Washington Street, Suite 1240
                                             Chicago, Illinois 60602
                                             Telephone: (312) 750-1265
                                             KCarroll@CarlsonLynch.com
                                             KShamberg@CarlsonLynch.com
                                             NLange@CarlsonLynch.com

                                             Edward W. Ciolko
                                             **CARLSON LYNCH LLP**

1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
ECiolko@carlsonlynch.com

Richard R. Gordon
**GORDON LAW OFFICES, LTD**
111. W. Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 332-5200
RRG@GordonLawChicago.com

*Counsel for Plaintiff and the Proposed Putative Classes*

27