**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EMILY FRIEND, individually and on behalf of a class of similarly situated individuals,

          *Plaintiff*,

     v.

FGF BRANDS (USA), INC., a Delaware Corporation, and FGF BRANDS, INC., a Canadian corporation.

          *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:18-cv-07644

Hon. Robert W. Gettleman

**PLAINTIFF'S OMNIBUS UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND
EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD**

**TABLE OF CONTENTS**

I.   INTRODUCTION    **1**

II.   BACKGROUND    **2**

III.  TERMS OF THE SETTLEMENT    **4**

   A. Class Definition    **4**

   B. Monetary Relief    **5**

   C. Notice of Settlement Administration Costs    **6**

   D. Service Award for Class Representative and Attorneys' Fees for Class Counsel    **6**

   E. Opt-Outs and Objections    **6**

   F. Release of Liability    **7**

IV.  ARGUMENT    **7**

   A. The Settlement Class Should Be Certified for Settlement Purposes    **7**
   1.   The Requirements of Rule 23(a) Are Satisfied    **7**
      i.   Numerosity    **8**
      ii.   Commonality    **8**
      iii.  Typicality    **9**
      iv.  Adequacy of Representation    **9**

   B. The Requirements of Rule 23(b)(3) Are Satisfied    **10**
   1.   Common Questions Predominate    **11**
   2.   Class Treatment of Plaintiff's Claims is Superior    **11**

   C. The Settlement Should Be Approved    **12**
   1.   The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigaiton    **13**
   2.   Continued Litigation Would Be Complex, Costly, and Lengthy    **15**
   3.   Proposed Class Counsel Is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement    **16**
   4.   The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations    **17**

   D. The Court-Approved Notice Plan Satisfied Due Process    **18**

   E. The Court Should Approve Plaintiffs' Request For Attorneys' Fees    **19**
   1.   The Court Should Calculate Fees as a Percentage of the Fund    **20**

    2.   **Counsel's Request Falls Within the Market Rate**    **21**
      i.    **The Requested Fee Comports with the Contract Between Plaintiff and Counsel**  **22**
     ii.    **The Requested Fee Reflects the Fees Awarded in Other Settlements**    **23**
    iii.    **Other Factors Support the Requested Fee**    **24**
        a.    **Risk of Non-Payment**    **25**
        b.    **Quality of Performance and Work Invested**    **26**
        c.    **Stakes of the Case**    **27**

    **F.**  **The Requested Service Award for Ms. Friend Should Be Approved**    **27**

    **G.** **The Requested Expenses Should Be Approved**    **29**

**V.**   **CONCLUSION**    **30**

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................... 23, 29

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*,
  2016 WL 6272094 (W.D. Mich. Mar. 1, 2016) ........................................... 28

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2011 WL 3290302 (N.D. Ill. July 26, 2011) ............................................ 17

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................... 7, 12

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) ........................................................ 19

*Armstrong v. Board of School Directors*,
  616 F.2d 305 (7th Cir. 1980) ................................................ 12, 13, 17

*Beesley v. Int'l Paper Co.*,
  2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ............................... 29

*Bickel v. Sheriff of Whitley Cnty.*,
  2015 WL 1402018 (N.D. Ind. March 26, 2015) ......................................... 24

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................. 19

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) .................................................... 16

*Capital One Tel. Consumer Prot. Act Litig.* ("In re Capital One,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................. 20

*City of Greenville*,
  904 F. Supp. 2d ..................................................................... 29

*Cook v. McCarron*,
  1997 U.S. Dist. LEXIS 1090 (N.D. Ill. Jan. 22,1997) ................................. 29

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ............................................... 27, 28, 29

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................... 15

*Cowen v. Lenny & Larry's, Inc.*,
  2018 WL 7456041 (N.D. Ill. Nov. 1, 2018) ............................................ 9

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) .......................................... 20

*CV Reit, Inc. v. Levy*,
  144 F.R.D. 690 (S.D. Fla. 1992) ..................................................... 10

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994) ..................................................... 20, 25

*Fogarazzao v. Lehman Bros., Inc.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ....................................................... 9

*Fricano v. LVNV Funding, LLC*,
  2015 U.S. Dist. LEXIS 121654 (N.D. Ill. Sep. 8, 2015) ............................... 20

*G.M. Sign v. Finish Thompson, Inc.*,
  2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2009) ........................................... 10
*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) .................................................................. 22
*Gaskill v. Gordon*,
  942 F. Supp. 382 (N.D. Ill. 1996) ...................................................... 21, 23
*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................. 12
*George v. Kraft Foods Global, Inc.*,
  2012 WL 13089487 (N.D. Ill. June 26, 2012) ................................... 24, 29
*Hageman v. AT & T Mobility LLC*,
  2015 WL 9855925 (D. Mont. Feb. 11, 2015) ......................................... 28
*Heekin v. Anthem, Inc.*,
  2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................................... 24, 28
*Ikuseghan v. Multicare Health Sys.*,
  2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ..................................... 28
*In re AT&T Mobility*,
  270 F.R.D. ........................................................................ 7, 10, 12, 13
*In re Dairy Farmers of Am., Inc.*,
  2015 WL 753946 (N.D. Ill. Feb. 20, 2015) ............................................ 24
*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
  280 F.R.D. 364 (N.D. Ill. 2011) ............................................................ 19
*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................... 17
*In re Southwest Airlines Voucher Litig.*,
  2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .......................................... 14
*In re Synthroid Marketing Litig.*,
  325 F.3d 974 (7th Cir. 2003) .................................................................. 20
*In re Synthroid Mkt. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ..................................................... 22, 28, 29
*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................ 21
*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................ 17
*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ....................................................... 12, 13, 16
*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
  300 F.R.D. 67 (D. Conn. 2014) .............................................................. 12
*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
  2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .......................................... 13
*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) .................................................................. 22
*Kitson v. Bank of Edwardsville*,
  2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ............................................. 24
*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ....................................................... 20, 22

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
 2015 WL 2383358 (D.N.J. May 18, 2015) ........................................................ 28
*Lees v. Anthem Ins. Companies Inc.*,
 2015 WL 3645208 (E.D. Mo. June 10, 2015) .................................................. 28
*Lucas v. Kmart Corp.*,
 234 F.R.D. 688 (D. Colo. 2006) ..................................................................... 17
*Mangone v. First USA Bank*,
 206 F.R.D. 222 (S.D. Ill. 2001) ...................................................................... 22
*Martin v. Reid*,
 818 F.3d 302 (7th Cir. 2020) ............................................................................ 9
Matter of Cont'l Ill. Sec. Litig.,
 962 F.2d 566 (7th Cir. 1992) .......................................................................... 21
*McCabe v. Crawford & Co.*,
 210 F.R.D. 631 (N.D. Ill. 2002) ........................................................................ 8
*McCue v. MB Fin., Inc.*,
 2015 WL 4522564 (N.D. Ill. July 23, 2015) .............................................. 23, 24
*McKinnie v. JP Morgan Chase Bank, N.A.*,
 678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................... 16
*Parker v. Risk Mgmt. Alternatives, Inc.*,
 206 F.R.D. 211 (N.D. Ill. 2002) ..................................................................... 8, 9
*Pearson v. NBTY, Inc.*,
 772 F.3d 778 (7th Cir. 2014) ..................................................................... 21, 23
*Perdue v. Kenny A.*,
 559 U.S. 542 (2010) ....................................................................................... 20
*Prena v. BMO Fin. Corp.*,
 2015 WL 2344949 (N.D. Ill. May 15, 2015) .................................................. 24
*Redman v. Radioshack Corp.*,
 768 F.3d 622 (7th Cir. 2014) .......................................................................... 23
*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................. 22
*Roach v. T.L. Cannon Corp.*,
 773 F.3d 401 (2d Cir. 2015) ........................................................................... 11
*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................... 15, 16
*Silverman v. Motorola Solutions, Inc.*,
 739 F.3d 956 (7th Cir. 2013) ..................................................................... 21, 25
Spano v. The Boeing Co.,
 2016 WL 3791123 (S.D. Ill. March 31, 2016) ................................................ 23
*Stumpf v. PYOD*,
 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013) ................................................. 22
*Sutton v. Bernard*,
 504 F.3d 688 (7th Cir. 2007) ............................................................... 19, 24, 26
*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ............................................................... 12, 13, 17
*Taubenfeld v. AON Corp.*,
 415 F.3d 597 (7th Cir. 2005) .......................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S.Ct. 2541 (2011)....................................................................................... 8
*Will v. Gen. Dynamics Corp.*,
 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)............................................................. 29
*Zolkos v. Scriptfleet, Inc.*,
 2015 WL 4275540 (N.D. Ill. July 13, 2015) ............................................................. 23
*Zyburo v. NCSPlus, Inc.*,
 44 F. Supp. 3d 500 (S.D.N.Y. 2014) ..................................................................... 10

**Rules**

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 8
Fed. R. Civ. P. 23(a)(1)-(4) ................................................................................. 7
Fed. R. Civ. P. 23(a)(4) ................................................................................... 9, 10
Fed. R. Civ. P. 23(e)(2) ..................................................................................... 12
Fed. R. Civ. P. 23(h) ........................................................................................ 29
Rule 23 ....................................................................................................... 12
Rule 23(a) .............................................................................................. 8, 9, 10
Rule 23(a)(2) ................................................................................................. 8
Rule 23(a)(3) ................................................................................................. 9
Rule 23(b)(3) ............................................................................................ 10, 11
Rule 23(e) ................................................................................................... 12

**Other Authorities**

H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) ................................ 18
Manual for Complex Litigation § 21.632 (4th ed. 2004)................................................. 7

# I.     INTRODUCTION

The present case is a putative class action in which Plaintiff Emily Friend ("Plaintiff") alleges that Defendants FGF Brands (USA), Inc. and FGF Brands, Inc. (collectively, "Defendants" or "FGF") falsely advertised certain naan products as being baked in a traditional tandoor oven to honor 2,000 year of tradition when, as Plaintiff alleges, Defendants actually baked that naan on an "endless" conveyor belt that rotates through a gas-fired commercial oven that Defendants patented. Plaintiff has alleged that this marketing practice violates various statutory and common law claims sounding in fraud in unjust enrichment, which allegations Defendants deny.

After extensive litigation, negotiation, and mediation before the Hon. Judge Morton Denlow (Ret.), the Parties agreed upon the principal terms of what was later memorialized in the Settlement Agreement. *See* ECF Doc. 119-1 ("Settlement Agreement" or "SA").

On October 23, 2020, this Court preliminarily approved the Settlement, finding the Settlement was fair, just, reasonable, and adequate, subject to further consideration at a final approval hearing. ECF Doc. 127-28. The Court also conditionally certified the Settlement Class, ordered that Notice be disseminated, set an opt out and objection deadline of January 4, 2021 and a Final Approval Hearing for February 26, 2021. *Id.*; ECF Doc. 130. No class members have objected to the Settlement and no class members have opted out. For the reasons set forth below, the Court should grant the final approval of the Settlement.

Moreover, as compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees and costs totaling $631,603.50, which represents 33.33% of the total Settlement Fund. This unopposed request should be approved because: (1) it represents the market rate for this type of settlement and is in line with the Seventh Circuit's guidance on attorneys' fees, and (2) represents a reasonable and

appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for a service award of $7,500 to Plaintiff Friend for her work on behalf of the Class, which includes her pre- and post-filing investigations, responding to multiple sets of written discovery and sitting for a day-long deposition, as well as her efforts in connection with settlement. Class Counsel respectfully submit that such an award is routine and proper.

Finally, Class Counsel requests $18,699.67 to reimburse reasonable expenses incurred in the course of litigation, mediation and, ultimately, the settlement of this matter.[1]

## II.    BACKGROUND

Plaintiff's Complaint in this litigation (the "Litigation") alleged that Defendants intentionally mislabeled certain of their naan products ("Products")[2] as being "Tandoor oven baked" and "HAND-STRETCHED AND TANDOOR OVEN-BAKED TO HONOR 2,000 YEARS OF TRADITION" to take advantage of the consumer appetite for artisanal and authentic, small-batch, handcrafted foods. *Id.*, ¶¶ 17-26.

Plaintiff has alleged that the Products are not actually baked in a tandoor oven, but are produced commercially on an "endless" conveyor belt oven that rotates through a gas-fired commercial oven that Defendants patented, which commercial oven is capable of producing

---

[1] The arguments contained in this brief are made for settlement purposes only. Defendants have informed Plaintiff that: (i) Defendants reserve their right to argue that class certification would be improper if this case proceeded on the merits, and that the elements necessary for class certification are not met in this case; (ii) although the parties have proposed a settlement on behalf of a nationwide class, Defendants reserve their right to argue that this Court should not preside over a proposed nationwide class for any purpose other than settlement; (iii) Defendants reserve their right to contest Plaintiff's counsel's proposed lodestar as well as any request for Attorneys' Fees and Costs, other than as made for the sole purpose of the parties' proposed Settlement; and (iv) although Defendants support final approval and have reviewed this brief as to form, they reserve their right to contest any representations made by Plaintiff herein as it relates to the merits of the lawsuit or the elements of class certification.

[2] "Products," as used in the Settlement Agreement, means (1) Stonefire Original Naan; (2) Stonefire Roasted Garlic Naan; (3) Stonefire Whole Grain Naan; (4) Stonefire Organic Original Naan; (5) Stonefire Original Mini Naan; (6) Stonefire Ancient Grain Mini Naan; (7) Stonefire Naan Dippers; and (8) any other Naan that Defendants produced that was marketed or sold in the United States and that was represented to the purchaser as Naan baked in a tandoor oven.

15,000 pieces of naan per hour.  *Id.*, ¶¶ 27-32.  Specifically, Plaintiff alleges that Defendants'

labeling practice constituted violations of state consumer fraud acts with respect to a multi-state

class (Count I), the Illinois Consumer Fraud and Deceptive Business Practices Act with respect to

an Illinois subclass (Count II),  the Illinois Uniform Deceptive Trade Practices Act with respect to

an Illinois subclass (Count III), fraudulent concealment with respect to a national class and Illinois

subclass (Count IV), and unjust enrichment with respect to a national class and Illinois subclass

(Count V).

On March 8, 2019, Defendants moved to dismiss the complaint.  ECF Doc. 16-17.  With

the exception of Count III, the Court denied Defendants' motion in its entirety, noting:

> A reasonable consumer who sees naan pre-packaged and plastic-wrapped could believe
> that each piece had been baked in small quantities in traditional tandoor ovens—all the
> more so when that naan supposedly was "hand-stretched and tandoor oven-baked to honor
> 2,000 years of tradition." And the erroneous belief that defendants bake their naan in
> traditional tandoor ovens may well be material to reasonable consumers: consumers who
> turn up their noses at food products that they deem mass-produced could plausibly pay a
> premium for small-batch, hand-made variants, including, as plaintiff alleges, for traditional
> tandoor oven-baked naan.

ECF Doc. 30, at 5.

Meanwhile, and through the Parties' June 22, 2020 mediation, the Parties engaged in

voluminous and wide-ranging discovery, serving and responding to multiple sets of written

discovery requests, meeting and conferring regarding the same, deposing Plaintiff, briefing

multiple motions to compel, serving multiple subpoenas on third-party entities that sold the

Products and litigating a motion to quash one of these third-party subpoenas.

In June 2020, the Parties agreed to attend private mediation in an attempt to resolve this

case on behalf of the Settlement Class.  The parties ultimately scheduled mediation for June 22,

2020 in Chicago, Illinois before the Hon. Judge Denlow, a well-respected and experienced JAMS

mediator and former U.S. Magistrate Judge for the Northern District of Illinois.  The Parties

exchanged lengthy confidential mediation statements thoroughly articulating their respective positions on each of the key legal issues relating to the liability, class certification, and damages, and each party provided a proposed term sheet ahead of mediation.

At mediation, the Parties discussed their competing views on various issues, including the relief to which the Settlement Class is potentially entitled and the prospects of class certification, and eventually began exchanging counterproposals on key aspects of the Settlement. The Parties' negotiations were at all times highly adversarial and at arm's length. After fourteen hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and signed a binding term sheet, which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator.[3]

## III.  TERMS OF THE SETTLEMENT

The Settlement Agreement contains the following key terms:

### A.  Class Definition

Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court certify the following Settlement Class:

All purchasers of the Products, from November 16, 2013 through the date the Court enters an order preliminarily approving the Settlement Agreement. Specifically excluded from the Settlement Class are: Defendants and their affiliates, employees, officers, directors, agents, representatives and their immediate family members; and class counsel, the judge and the magistrate judge who have presided over the Action, and their immediate family members. *See* SA, ECF Doc. 119-1, § 2.31.

---

[3] Unless otherwise indicated, all capitalized terms herein have the meaning given them in the Settlement Agreement.

## B. Monetary Relief

Defendants have agreed to pay, on a non-reversionary basis, cash in the amount of $1,895,000.00 (One Million, Eight Hundred and Ninety-Five Thousand Dollars and Zero Cents) to create the Settlement Fund for the benefit of Settlement Class Members, which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee and Expense Award, and any Service Award, and will be in full satisfaction of all of Defendants' monetary obligations under the Settlement and Settlement Agreement. *Id.* at § 4.01.

Subject to the terms of the Settlement Agreement, Authorized Claimants will be entitled to receive a payment of $2.50 for each Product purchased during the Class Period, with no additional proof of purchase required beyond a Claim Form including an attestation as to the purchase. *Id.* at § 4.02. Class members without proof of purchase may make claims for a maximum of five products, and Class members with proof of purchase will be permitted to make claims for every corresponding purchase. *Id.* Class members will receive a pro rata adjustment upward or downward depending on the number of Valid Claims submitted, and the amount that remains in the Settlement Fund after other specified payments are made.[4] *Id.* § 4.03; *see also id.* §§ 4.05-4.09 (timing of and process for payment distribution). Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund or Available Cash Award Total shall be returned or refunded to Defendants.[5] *Id.* § 4.01.

As of the date of this filing, 88,638 valid, timely claims have been submitted, with zero opt outs and zero objections. *See* Declaration of Carla Peak (attached hereto as **Exhibit A**) at ¶¶ 16-18.

---

[4] i.e., Notice and Administration Costs, the Attorneys' Fee and Expense Award, and Plaintiff's Service Award.
[5] Unless the Settlement is terminated pursuant to Section 13 of the Settlement Agreement.

### C.  Notice of Settlement Administration Costs

Defendants have agreed to pay from the Settlement Fund all Notice and Administrative Costs to the Settlement Administrator. *Id.* § 4.01.  The total anticipated cost upon completion of all claims-processing activities is $356,103.00.  *See* Exhibit A at ¶ 19.

### D.  Service Award for Class Representative and Attorneys' Fees for Class Counsel

Defendants have agreed to pay from the Settlement Fund a reasonable Service Award to Plaintiff in recognition of the time and effort she expended in pursuing this action, and in fulfilling her obligations and responsibilities as Class Representative. *Id*. § 5.01.  Defendants have further agreed to pay from the Settlement Fund a reasonable Attorneys' Fee and Expense Award to proposed Class Counsel, as may be awarded by the Court. *Id*. § 5.03.

Pursuant to the Agreement, Class Counsel is to make an application to the Court for a Service Award payment to Plaintiff in an amount not to exceed $7,500.00 (Seven Thousand, Five Hundred Dollars and Zero Cents), *id*. § 5.01, and for a reasonable Attorneys' Fee Award in an amount not to exceed 33.33% of the Settlement Fund, plus reasonable expenses incurred in the Action. *Id*. § 5.03.  The Settlement Agreement is neither dependent nor conditioned upon the Court approving Plaintiff's and Class Counsel's requests for the aforementioned payments; nor upon the Court awarding the particular amounts sought. *Id*. § 5.04.

### E.  Opt-Outs and Objections

Any Settlement Class Member who intended to object or opt out of the Settlemnt was required to do so on or before January 4, 2021.  ECF Doc. 128.  As of that date (and the filing of this motion for final approval as well), ***no*** class member has objected to the Settlement and ***no*** class member has opted out from the Settlement.

### F. Release of Liability

As of the date of the Final Approval Order and Judgment entered by the Court, the Released Persons—which are defined to include Defendants and their resellers, retailers, wholesalers, distributors, and others—will, in exchange for the monetary relief described above, be deemed fully released and forever discharged from any and all Released Claims as set forth in Section 2.28 of the Settlement Agreement, except that no claims of Settlement Class Members who timely and properly request exclusion will be released. *Id.* §§ 2.26, 10.03.

## IV. ARGUMENT

### A. The Settlement Class Should Be Certified for Settlement Purposes

The proposed Settlement Class is appropriate for certification pursuant to Rule 23(a) and fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT&T Mobility*, 270 F.R.D. at 340-345 (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). The Court should certify the Settlement Class – defined as all purchasers of the Products, from November 16, 2013 through October 23, 2020 – under Rule 23(a) and Rule 23(b)(3).

#### 1. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (1) the proposed settlement class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *In re AT&T*, 270 F.R.D. at 340-44. The settlement class satisfies each of these requirements.

### i. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff submits that the Settlement Class consists of millions of individuals dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty or more class members is generally sufficient to establish numerosity). Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### ii. Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).

Plaintiff contends that many questions of law and fact are common to the Settlement Class in this case, including but not limited to: 1) Whether Defendants knew or should have known that their conveyor-belt commercial oven was not a tandoor oven; 2) Whether Defendants wrongfully represented that the Products are "Tandoor oven baked" and "Tandoor-Oven Baked to Honor 2,000 Years of Tradition," 3) Whether those representations are likely to deceive a reasonable consumer; and 4) Whether a reasonable consumer would consider, in purchasing the Products, the fact that the Products were commercially produced in a conveyor-belt oven rather than in a tandoor oven. Accordingly, the commonality requirement of Rule 23(a) is satisfied. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative

fact is usually enough to satisfy the [commonality] requirement.").  And the approval of a nationwide settlement class is appropriate.  *See Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2020) (affirming approval of nationwide settlement class of consumer claims, including claims under the Illinois Consumer Fraud Act and similar laws of other states); *Cowen v. Lenny & Larry's, Inc.*, No. 1:17-cv-01530, 2018 WL 7456041 (N.D. Ill. Nov. 1, 2018) (Granting preliminary approval of nationwide settlement class for consumer mislabeling claims, including those for violation of the Illinois Consumer Fraud Act).

### iii.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiff submits that her claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213.  Plaintiff and each Settlement Class Member purchased the Products with the same allegedly deceptive labelling, each of the Products were allegedly baked in the same type of oven, and each of the consumers were similarly misled.  Moreover, Plaintiff and the putative Settlement Class members all seek the same statutory and actual damages.  Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### iv.  Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be

qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

Plaintiff submits that the first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign*, 2009 U.S. Dist. LEXIS 73869, at *15-16; *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same allegedly deceptive labeling and seeks the same monetary relief for herself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who is experienced in class actions generally and consumer mislabeling litigation in particular. *See* Dkt. Nos. 119-3, 119-4 (Class Counsel Firm Resumes). Plaintiff's counsel has successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id.* Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

## B. The Requirements of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must additionally show (1) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T*

*Mobility*, 270 F.R.D. at 344-45. Both requirements are easily satisfied by the proposed Settlement Class.

### 1. Common Questions Predominate

Plaintiff submits that the predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See Roach v. T.L. Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

The entire case is focused on Defendants' alleged common practice of mislabeling the Products to induce consumers into believing the Products were baked traditionally and handmade in small batches in a tandoor oven when they were actually commercially produced on an "endless conveyor belt" oven that Defendants patented.

Thus, the central questions in this case— whether Defendants' labelling was misleading to consumers and, if so, to what extent— are all capable of resolution on a class-wide basis by looking to the Defendants' labeling and manufacturing documentation and consulting with Plaintiff's economists and other industry experts with respect to consumer damages.

Because common questions predominate over individual ones, the predominance requirement is satisfied for purposes of final approval.

### 2. Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members'

claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem*, 521 U.S. 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

Plaintiff submits that a class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claims are shared by thousands of other consumers, each of whom purchased Products that were allegedly mislabeled and baked in the same fashion. The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, Plaintiff believes it is unlikely that any Settlement Class Member would be willing or able to pursue relief on an individual basis, as evidenced by the fact that there are no objections or opt outs. Accordingly, the superiority requirement is satisfied for the purposes of final approval. The Court should certify the Settlement Class.

### C.  The Settlement Should Be Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314. While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at

1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable, and adequate: (a) the strength of the plaintiff's case compared to the amount of the settlement offer; (b) the length, complexity, and expense of further litigation; (c) the opinion of competent counsel; and (d) the stage of the proceedings and amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable, and adequate, warranting its final approval.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigaiton

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The $1.895 million provided by the Settlement is substantial and provides for each Settlement Class Member who submits a Valid Claim to receive a Cash Award. Plaintiff continues to believe that her claims against Defendants have merit; it is, however, clear to Plaintiff that the legal uncertainties associated with continued litigation may pose substantial risk of non-recovery

to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). These various risks include, but are not limited to, questions of whether the packaging was likely to mislead a reasonable consumer is common to the claims of every class member, whether the damages model is compatible with the theory of liability, whether the conduct at issue was willful, whether the same questions of law and fact predominate over questions affecting individual members, and whether there are reliable and feasible ways of identifying those who fall within the class.

Specifically, and among other arguments, Defendants have contended that Plaintiff will not be able to show that reasonable consumers are likely to be materially deceived because they are insufficiently familiar with what constitutes a tandoor oven and, to the extent consumers have an understanding of what a tandoor oven is, that understanding will not be uniform. Defendants also contend that reasonable consumers would not be deceived when purchasing products in plastic wrap that otherwise appear commercially produced, and that regardless of how the Products are baked, they have the same characteristics of naan baked in a traditional tandoor oven. Defendants also contend that, even assuming a consumer is confused by the product claims, such claims are not material to consumer purchases. Defendants have earned multiple awards and other recognition for the quality of their products, and have substantial evidence to support their position that consumers purchase the Products because of their high quality ingredients and authentic texture and taste, not because of the allegedly perceived shape or capacity of the ovens in which the Porducts are baked. Defendants also contend that they have substantial evidence supporting the truthfulness of the "tandoor baked" claim and have obtained patents (including from India)

referring to their ovens as tandoor ovens and have earned awards for innovation that also expressly refer to their ovens as tandoors.

Plaintiff maintains that Defendants have more to lose at trial and face more risks, but nonetheless acknowledges that settling now reduces risks to herself and the Class Members as well as to Defendants.

## 2. Continued Litigation Would Be Complex, Costly, and Lengthy

Settlement approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy, very expensive, and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment, and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a welldeserved reputation as being most complex."). For example, Plaintiff would need to further consult with economists to assist in performing a price premium analysis to assess damages to the class, and would need to further consult with industry and consumer survey experts. All experts will have to prepare reports and sit for depositions, which will be followed by extensive and expensive *Daubert* motions directed at the experts. The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $1.895 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal. Further, Plaintiff's counsel has retained several

additional class members residing in Illinois and other states who, in the absence of settlement, could bring additional lawsuits against Defendants, which would result in more costs on both sides.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The Settlement is also endorsed as adequate and fair by [Ret.] Judge Denlow who actively oversaw a mediation between the Parties that lasted more than 14 hours. ECF Doc. No. 119-2. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel Is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Carlson Lynch LLP (with Katrina Carroll as Lead Counsel) and Gordon Law Offices, have significant experience in consumer class action litigation and have been appointed and served as class counsel in similar consumer mislabeling cases. *See* Dkt. Nos. 119-3, 119-4 (Class Counsel Firm Resumes). Class Counsel strongly endorse this Settlement, which was negotiated at arm's length before an experienced mediator.

Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length

negotiations facilitated by a mediator . . . suggest that the settlement is fair and meris final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### 4. The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly two years of hard-fought litigation and informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by Defendants concerning every aspect of this case. Armed with this information, Plaintiff and her counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986).

Mediation was also hard-fought. While the Parties were able to reach an agreement in principle after fourteen hours of extensive negotiations with the assistance of Judge Denlow, that Settlement Agreement was only possible because it was based on a robust and fully informed factual background. Because the Settlement is the product of "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.

17

Colo. 2006) (citations omitted); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").

Accordingly, the final factor weights in favor of finding the Settlement fair, reasonable and adequate.

### D. The Court-Approved Notice Plan Satisfied Due Process

The Settlement Agreement required the Settlement Administrator to implement a comprehensive Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and the Settlement Agreement. *Id*. § 8. Plaintiff submitted a description and detailed plan for this notice program prior to the Court's preliminary approval of the settlement. ECF Doc. Nos. 126, 126-1, 126-3. After considering this plan, the Court granted Plaintiff's motion for preliminary approval.

Thereafter, the Settlement Administrator implemented the notice plan by doing the following:

- Purchasing and delivering over 109 million impressions that appeared on various websites, including Facebook and Instagram, targeted to Settlement Class Members, such as adults 25 years of age and older with an interest in Indian food or cuisine, an intent to purchase Indian food or cuisine, or those who have purchased chilled or pre-packaged Indian food, and alongside website content related to South Asian and/or Indian cuisine;

- Monitoring social media platforms websites, blogs, and forums for information about the settlement and/or the claims process throughout the duration of the administration, with claims information appearing on sites such as Top Class Actions, ClassAction.org, Class Action Wallet, Reddit, Red Flag Deals, The Accidental Saver, Passion for Savings, Yakima Herald, Class Action Rebates, Nifties 'n Thrifties, My Savings, The Coupons App, Best Web Stiff!, Coupon Pro, and Coupon Confidant;

- Establishing and maintaining the Settlement Website, www.NaanClassActionSettlement.com, which received more than 147,000 hits, as well as a toll-free number and P.O. Box for Class Members who elected to submit claims in hard copy form.

*See* Exhibit A at ¶¶ 5-15. These efforts "reached over 70% of likely Settlement Class Members on average 2.7 times each . . . meet[ing] the 70-95% reach standard set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*." *Id.*, ¶ 20.

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

### E. The Court Should Approve Plaintiffs' Request For Attorneys' Fees

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

## 1. The Court Should Calculate Fees as a Percentage of the Fund

Courts in this District often look to *In re Synthroid Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("In re Capital One"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of themarket rate" and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

One of the advantages that the percentage of the fund has over lodestar,[6] and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

---

[6] Plaintiff notes that Class Counsel's request for 33.33% of the Settlement Fund represents a negative multiplier on Class Counsel's lodestar, which exceeds the $631,603.50 sought. This is another reason to find the fee request fair and reasonable, as "there is a 'strong presumption' that the lodestar figure is reasonable." *Fricano v. LVNV Funding, LLC*, No. 14 C 08225, 2015 U.S. Dist. LEXIS 121654, at *3 (N.D. Ill. Sep. 8, 2015) (*quoting Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010)). Should the Court determine that a "lodestar crosscheck" is appropriate here, Class Counsel will promptly provide detailed timesheets for the Court's review.

The percentage method is bereft of largely judgmental and timewasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); see also Matter of Cont'l Ill. Sec. Litig., 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon,* 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), aff'd, 160 F.3d 361 (7th Cir. 1998).

## 2. Counsel's Request Falls Within the Market Rate

The Court is also tasked with determining what percentage of the settlement fund is appropriately allocated as attorney's fees. The Seventh Circuit has held that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, the court held that there should be a "presumption" that fees in any given settlement should not "exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). Although *Pearson* establishes that courts must also consider the value of the settlement exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorneys' fees in consumer class actions.

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $631,603.6 in attorney's fees. This request amounts to 33.33% of the entire $1,895,000 Settlement Fund recovered by Class Counsel. The Seventh

Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other factors are relevant, as well, including the risk counsel undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

### i. The Requested Fee Comports with the Contract Between Plaintiff and Counsel

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiff and her counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family*

*Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff entered into a retainer agreement with Class Counsel that reflects this fee range, as is normal in consumer cases in this District. Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

### ii. The Requested Fee Reflects the Fees Awarded in Other Settlements

Under the percentage of recovery theory, Plaintiff's requested fee award of 33.33% of the Settlement Fund is well within range of percentage-based recoveries that courts in this Circuit routinely approve. The Seventh Circuit has stated that in consumer fraud class actions such as this one, "the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782. Likewise, the court in *Redman* confirmed that "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fees that the parties agreed to is the ratio of (1) that fee to (2) the fee plus what the class members received." *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

Accordingly, the range of percentage of fund awards in the Seventh Circuit is between 33% and 50%. *Pearson*, 772 F.3d at 782. *See also Gaskill*, 942 F. Supp. at 386 (awarding a 38% fee); Spano v. The Boeing Co., No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement*); McCue v. MB Fin., Inc.*, No. 15- 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015)

(awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund); *George v. Kraft Foods Global, Inc.*, No. 1:08-cv-3799, 1:07-cv-1713, 2012 WL 13089487 (N.D. Ill. June 26, 2012) (awarding fee of $3,166,166, which was 33.33% of $9.5 million settlement fund); *Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) (33% fee award); *McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 WL 45522564 (N.D. Ill. July 23, 2015) (33% of settlement fund after claims administrator's fees were subtracted); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ("Sixth, the Court finds that there is support from other cases in this Circuit and nationally to support a market rate of 33.3%." (citing 12 cases within the Seventh Circuit where fees were awarded of at least 33%) (footnote 3)); *Pearson v. Target*, No. 1:11-cv-07972 (N.D. Ill.) (Order dated Aug. 25, 2016) (awarding class counsel 33% of the net settlement fund created in that case).

### iii.  Other Factors Support the Requested Fee

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel, and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

### a. Risk of Non-Payment

As set forth above, this action involves sharply opposing positions on many issues, including but not limited to questions of whether the packaging was likely to mislead a reasonable consumer is common to the claims of every class member, whether the damages model is compatible with the theory of liability, whether the conduct at issue was willful, whether the same questions of law and fact predominate over questions affecting individual members, and whether there are reliable and feasible ways of identifying those who fall within the class. Further, Defendants have contended that Plaintiff will not be able to show that reasonable consumers are likely to be materially deceived by the labeling, particularly given Defendant's contention that the Product's packaging reflects that it is commercially produced, and that their understanding of traditional tandoor ovens will not be uniform. Were it not for settlement, continued protracted and contentious litigation would have followed, and Class Counsel would face a significant risk that they would obtain nothing.

As such, throughout this action, Class Counsel have faced substantial risk that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk further supports the requested fee award, as "[c]ontingent fees compensate lawyers for the risk of nonpayment" and "[t]he greater the risk of walking away empty handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958.

The risk of non-payment is therefore a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the

suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite the fact that extensive class discovery would likely be required, not only with Defendant but also then unknown retailers and other third-party seller.

In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted.

### b. Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through contested motion practice, party and third-party discovery, and adversarial negotiations to achieve a $1.895 million, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. The proposed Settlement was reached after two years of litigation and was informed by counsel's thorough review and analysis of significant amounts of documents concerning every aspect of this case. Mediation was also hard-fought, having only reached an agreement in principlate after mediating with Judge Denlow.

As set forth above, Class Counsel are experienced in consumer and class action litigation, including those for consumer fraud. *See* Dkt. Nos. 119-3, 119-4 (Class Counsel Firm Resumes).

Given the outstanding $1.895 million settlement obtained for the class, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

### c. Stakes of the Case

The stakes of the case further support the requested fee award. This case involves hundreds of thousands of Settlement Class Members who allegedly received mislabeled Products. The amount each Settlement Class Member is individually eligible to recover is low (the Products retail for several dollars each), and thus individuals are unlikely to file individual lawsuits. Indeed, individual litigants likely would have to provide proof of purchase well beyond what is required here to submit a claim and many Class Members do not retain proof of purchase for sundries. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### F. The Requested Service Award for Ms. Friend Should Be Approved

Class Counsel also respectfully request that the Court grant a service award of $7,500 to Plaintiff Emily Friend for her efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff Friend answered multiple sets of discovery requests, was deposed, participated in pre- and post-filing investigations and settlement efforts, and otherwise stayed abreast of the proceedings through litigation and settlement.

The amount requested is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), aff'd, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23,

2015) (awarding $20,000 service award). Plaintiff's requested service award of $7,500 is therefore reasonable given the course of the Litigation and should be approved.

### G. The Requested Expenses Should Be Approved

Courts approving a class action settlement may "award reasonable. . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid*, 264 F.3d at 722. "It is well established that counsel who create a common fund. . . are entitled to the reimbursement of litigation costs and expenses, which includes such things as. . . computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott*, 2015 U.S. Dist. LEXIS 93206 at *13.

Class Counsel's request for $18,699.67 in costs and expenses accounts for these same routine items and are reasonable and appropriate given the length and course of the litigation, mediation and settlement. *See, e.g., Cook v. McCarron*, No. 92 C 7042, No. 95 C 0828, 1997 U.S. Dist. LEXIS 1090, at *61 (N.D. Ill. Jan. 22,1997) *aff'd sub nom. Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *12 (S.D. Ill. Jan. 31, 2014); *City of Greenville*, 904 F. Supp. 2d at 910. Moreover, "Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *George v. Kraft Foods Glob., Inc.*, No. 1:08-cv-3799, 2012 U.S. Dist. LEXIS 166816, at *14 (N.D. Ill. June 26, 2012). Class Counsel's request for reimbursement of costs and expenses should be approved.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order

granting final approval of the Settlement, approving $631,603.50 in fees, $18,699.67 in expenses,

and a service award to Plaintiff Emily Friend in the amount of $7,500.

DATED: February 2, 2021

By: */s/ Katrina Carroll*
    Katrina Carroll
    Kyle A. Shamberg
    Nicholas R. Lange
    **CARLSON LYNCH LLP**
    111 W. Washington Street, Suite 1240
    Chicago, Illinois 60602
    Telephone: (312) 750-1265
    KCarroll@CarlsonLynch.com
    KShamberg@CarlsonLynch.com
    NLange@CarlsonLynch.com

    Richard R. Gordon
    **GORDON LAW OFFICES, LTD**
    111. W. Washington Street. Suite 1240
    Chicago, Illinois 60602
    Telephone: (312) 332-5200
    RRG@GordonLawChicago.com

    *Counsel for Plaintiff and the Proposed Putative Classes*